Louise Elizabeth **HURST**, Plaintiff,

v.

**TEXAS DEP'T OF ASSISTIVE & REHAB. SERV., et al.,** Defendants.

No. CIV. DR–03–CA–104–AM.

United States District Court, W.D. Texas, Del Rio Division.

Sept. 22, 2005.

Alpha Hernandez, Texas Rural Legal Aid, Del Rio, TX, Counsel for Plaintiff.

Joe H. Thrash, Assistant Attorney General for the State of Texas, Austin, TX, Counsel for Defendants.

## ORDER

LUDLUM, District Judge.

Pending before the Court in the above-styled cause is the United States Magistrate Judge's Report and Recommendation that the Defendants' First Amended Motion to Dismiss, filed under FED. R. CIV. P. 12(b)(1) and 12(b)(6), be denied. The Defendants timely filed a written objection to the United States Magistrate Judge's recommendation. Due to the Defendants' objection, and in accordance with 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b), this Court must now conduct a *de novo* review of the Defendants' motion.

## I. BACKGROUND

Louise Elizabeth Hurst ("Hurst") was diagnosed with cervical spine damage in June 2002. She sought assistance for her physical circumstances from the Texas Department of Assistive and Rehabilitative Services ("Department"), which was formerly known as the Texas Rehabilitation Commission. The Department determined that Hurst was eligible for vocational rehabilitation services and referred her to a neurologist for a consultation.

The neurologist recommended immediate surgery to fuse Hurst's cervical vertebrae. The Department also approved, at Hurst's request, a second opinion consultation with another doctor. That doctor also recommended immediate surgery to fuse the vertebrae. He also referred Hurst to an infectious disease specialist to determine the nature and extent of an infection in Hurst's neck before setting a date for surgery. In March 2003, the Department approved Hurst's consultation with the infectious disease specialist, who then requested tests to determine the nature of Hurst's infection.

Around March 17, 2003, Hurst's caseworker indicated by telephone that the Department had approved the tests requested by the infectious disease specialist and the surgery to fuse her vertebrae. Later that month, however, Hurst's caseworker told her in person that the Department would not approve the tests or surgery because the Department did not cover exploratory surgery. In a letter dated March 31, 2003, the Department confirmed its decision to Hurst and informed her that it would not approve any further medical treatment.

Hurst filed a timely appeal of the Department's decision and proceeded to exhaust all available administrative remedies. Hurst brought an action in this Court, pursuant to 29 U.S.C. § 794a(a)(2), 29 U.S.C. § 722(c)(5)(J)(i), and 28 U.S.C. § 1331 for judicial review of the Department's decision. The Department responded by filing a motion to dismiss stating among other things that: 1) Hurst had failed to state a claim under § 504 of the Rehabilitation Act of 1973 (codified in 29 U.S.C. § 794); and, 2) Texas had not waived its Eleventh Amendment sovereign immunity to submit itself to this Court's jurisdiction under § 722(c)(5)(J)(i). Hurst responded that she had stated a claim for relief under § 794a(a)(2) and that the Department and Texas had waived Eleventh Amendment immunity under

§ 722(c)(5)(J)(i) when they accepted federal funds.

The United States Magistrate Judge found that Hurst had failed to state a claim under § 794a(a)(2),[1] but that Hurst could still obtain relief under § 722(c)(5)(J)(i)[2]. The Department argues that the Magistrate Judge should have dismissed Hurst's claims that were brought under § 794a(a)(2) for failure to claim any form of discrimination. The Department further argues that her § 722(c)(5)(J)(i) claim for judicial review is barred by Texas's claim of Eleventh Amendment immunity. The Court is in agreement with the Magistrate Judge's finding that Hurst has failed to state a claim pursuant to § 794a(a)(2). As a result, any claim Hurst brought under § 794a(a)(2) is dismissed. The Court must now determine whether Hurst may obtain relief under § 722(c)(5)(J)(i).

## II. DISCUSSION

■ An in-depth analysis of this specific issue— § 722(c)(5)(J)(i) jurisdiction and a state's claim of Eleventh Amendment immunity—reveals to the Court that this is a novel issue that has yet to be addressed by or within the Fifth Circuit. In fact, as of the writing of this opinion, the Court has found only two cases, both unpublished, that attempt to resolve § 722(c)(5)(J)(i) jurisdiction and Eleventh Amendment immunity. *See White v. Vocational Rehab.*, 2004 WL 3049760 (D.Or. Dec.20, 2004) (finding that Oregon waived Eleventh Amendment immunity for § 722(c)(5)(J)(i) judicial review when it accepted federal funds), *adopted by White v. Vocational Rehab.*, 2005 WL 771395 (D.Or. Apr.5, 2005); *Richards v. Alibozek*, 2002 WL 1815918, at *5, 2002 Conn.Super. LEXIS 2262 (Conn.Super. June 26, 2002) (stating that "because the General Assembly has not waived sovereign immunity for suits under the Rehabilitation Act, the state court is not a court 'of competent jurisdiction' within § 722(c)(5)(J)(i).")[3]. The Court, however, is confident in its ability to reach a decision based on a combination of information before it and the vast amount of Eleventh Amendment jurisprudence, for as Chief Justice Marshall opined, "[i]t is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60, 73 (1803).

### A. Eleventh Amendment Immunity

The Eleventh Amendment to the United States Constitution states the following:

> (i) In general. Any party aggrieved by a final decision described in subparagraph (I), may bring a civil action for review of such decision. The action may be brought in any State court of competent jurisdiction or in a district court of the United States of competent jurisdiction without regard to the amount in controversy.

---

1. The Magistrate Judge found that § 794a(a)(2) "provides relief to those aggrieved by an act or failure to act under 'Section 794 of this title'" and that "Hurst is not claiming to have been 'excluded from participation in' or 'denied the benefits of' or 'subjected to discrimination under' any federal program as a result of her disability." (Report and Recommendation at 4.)

2. § 722. Eligibility and individualized plan for employment
 (c) Procedures.

 . . . . .

 (5) Hearings.

 . . . . .

 (J) Civil action.

3. The Court does not reach to the issue of whether Texas may be sued in its own courts as provided for in § 722(c)(5)(J)(i). *See Alden v. Maine*, 527 U.S. 706, 754, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999) (holding that Congress cannot subject a state to suit in state court without its consent).

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI. The Fifth Circuit has instructed that "[t]he immunity afforded to states under the Eleventh Amendment 'implicates the fundamental constitutional balance between the Federal Government and the States.' Therefore, at its core, the Eleventh Amendment serves 'as an essential component of our constitutional structure.' " *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 276 (5th Cir.2005) (en banc) (citations omitted).

### B. Exceptions to Eleventh Amendment Immunity

■ Eleventh Amendment immunity, however, is not absolute in the protection it affords a state from law suits. *See id.* Congress may abrogate a state's Eleventh Amendment immunity by enacting legislation under the Fourteenth Amendment's § 5 Enforcement Clause [4]. *See id.* at 276–77. "Congress can single-handedly strip the states of their Eleventh Amendment immunity and thereby authorize federal court suits by individuals against the states. When Congress does this, it is exercising its power to abrogate Eleventh Amendment immunity." [5] *Id.* at 277. On the other hand, a state may waive its immunity or consent to suit in federal

court. "[A] State's sovereign immunity is 'a personal privilege which it may waive at pleasure.' " *College Sav. Bank v. Fla. Prepaid Postsecondary Ed. Expense Bd.*, 527 U.S. 666, 675, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999) (quoting *Clark v. Barnard*, 108 U.S. 436, 447, 2 S.Ct. 878, 27 L.Ed. 780 (1883)). "The decision to waive that immunity, however, 'is altogether voluntary on the part of the sovereignty.' " *Id.* (quoting *Beers v. Ark.*, 61 U.S. 527, 20 How. 527, 529, 15 L.Ed. 991 (1857)). As the Fifth Circuit has illustrated, "[w]hen a state consents to suit or waives its Eleventh Amendment immunity, it knowingly and voluntarily forfeits the immunity's protections." *Pace*, 403 F.3d at 277 n. 13.

### C. Article I Spending Clause Powers and Waiver of Eleventh Amendment Immunity

■ Section 102 of the Rehabilitation Act (as codified in 29 U.S.C. § 722) was enacted under Congress's Article I Spending Clause powers.[6] *See* Rehabilitation Act of 1973, 93 Pub.L. No. 112, 87 Stat. 355 (Sept. 26, 1973). The Rehabilitation Act Amendments of 1998 amended § 722 to include the private right of action for review of a hearing officer's decision in Federal court through § 722(c)(5)(J)(i). *See* Rehabilitation Act Amendments of 1998, 105 Pub.L. No. 220, 112 Stat. 936 (Aug. 7, 1998). The Supreme Court has "repeatedly characterized ... Spending Clause legislation as 'much in the nature of

---

**4.** "The Congress shall have power to enforce, by appropriate legislation, the provisions of this article." U.S. CONST. amend. XIV, § 5.

**5.** Because § 102 of the Rehabilitation Act is legislation enacted via Congress's Article I Spending Clause powers, *see infra* Section C, the Court will not undertake an "abrogation" discussion, as the Supreme Court has "made it clear that Congress lacks power under Article I to abrogate the States' sovereign immunity from suits commenced or prosecuted in

the federal courts." *Alden, supra* note 3, 527 U.S. at 712, 119 S.Ct. 2240 (explaining the holding in *Seminole Tribe v. Fla.*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996)).

**6.** Allows Congress to "lay and collect Taxes, Duties, Imposts, and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States." U.S. CONST. art. I, § 8, cl. 1.

a *contract:* in return for federal funds, the recipients agree to comply with federally imposed conditions.'" *Barnes v. Gorman,* 536 U.S. 181, 186, 122 S.Ct. 2097, 153 L.Ed.2d 230 (2002) (emphasis in original) (quoting *Pennhurst State Sch. & Hosp. v. Halderman,* 451 U.S. 1, 17, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981)). "Accordingly, if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously." *Id.* (quoting *Pennhurst,* 451 U.S. at 17, 101 S.Ct. 1531). To be valid, Spending Clause legislation must: 1) be in pursuit of the "general welfare;" 2) be unambiguous; 3) be reasonably related to the purpose of the expenditure to which they were attached; and 4) not be in violation of an independent constitutional provision. *See South Dakota v. Dole,* 483 U.S. 203, 207–08, 107 S.Ct. 2793, 97 L.Ed.2d 171 (1987). Additionally, the financial inducement offered by Congress cannot "be so coercive as to pass the point at which 'pressure turns into compulsion.'" *Id.* at 211, 107 S.Ct. 2793 (quoting *Steward Machine Co. v. Davis,* 301 U.S. 548, 590, 57 S.Ct. 883, 81 L.Ed. 1279 (1937)). As a result:

> [i]f waiver results from participation in a Spending Clause program, the program must be a valid exercise of Congress's spending power; the waiver condition must satisfy the clear-statement rule (thereby ensuring that the state's waiver is "knowing"); and the program must be non-coercive (automatically establishing that the waiver is "voluntary").

*Pace,* 403 F.3d at 279.

### D. Application of the Law to the Instant Case

The Department argues that § 102—unlike § 504 of the Rehabilitation Act, which through 42 U.S.C. § 2000d–7 provides a clear statement to the states that they must waive their Eleventh Amendment immunity in order to receive federal funds—does not provide a clear statement to the states of a waiver requirement of sovereign immunity in return for receipt of federal funds. Hurst counters that even though § 102 does not provide express or precise language requiring states to waive their immunity, § 722(c)(5)(J)(i) clearly indicates Congress's intent to condition the receipt of federal funds on states' waiver of sovereign immunity by requiring states to subject themselves to federal judicial review of any final state administrative decision. To support her contention that § 102 should receive the same amount of significance as § 504, Hurst cites to the Fifth Circuit's holding in *AT&T Comm. v. BellSouth Telecomm. Inc.,* a case addressing the 1996 Telecommunications Act. 238 F.3d 636 (5th Cir.2001); *see also MCI Telecom. Corp. v. Illinois Bell Tel. Co.,* 222 F.3d 323, 341 (7th Cir.2000) (holding that "[a]lthough the language of the statute [47 U.S.C. § 252] does not contain the express waiver language ... the structure of the pertinent section of the statute ... nevertheless makes clear that Congress intended to provide for federal court review of any regulatory determination made under the section ....").[7] The question that this Court must then address is whether § 722(c)(5)(J)(i) indeed provides a clear statement to the states that they are waiving their Eleventh Amendment immunity. If this Court determines that Congress did not convey a clear statement to the states, then the Court need not resolve whether the states' waiver was knowing and voluntary.

The Supreme Court, in *Atascadero State Hosp. v. Scanlon,* held that Congress, through § 504 of the Rehabilitation Act,

---

**7.** The Court will discuss, *infra,* the comparison of the Telecommunications Act of 1996 to the Rehabilitation Act of 1973 for purposes of Eleventh Amendment Immunity.

did not validly abrogate the states' Eleventh Amendment immunity, nor did it express a clear intent to condition the receipt of federal funds—made available to the states through Congress's Art. I, § 8 Spending Clause powers—on the states' waiver of their Eleventh Amendment immunity. 473 U.S. 234, 247, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985). In response to *Atascadero,* Congress enacted § 2000d–7 to provide the clear statement that the Court had previously held that was lacking. Subsequently, a number of circuits, including the Fifth Circuit, *see Pederson v. Louisiana State Univ.,* 213 F.3d 858, 876 (5th Cir.2000), have held that § 504 clearly conditions the receipt of federal funds with waiver of Eleventh Amendment immunity. *See Nieves–Marquez v. Puerto Rico,* 353 F.3d 108, 129–30 (1st Cir.2003); *A.W. v. Jersey City Pub. Schs.,* 341 F.3d 234, 244–51 (3d Cir.2003); *Bruggeman v. Blagojevich,* 324 F.3d 906, 912 (7th Cir.2003); *Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.,* 344 F.3d 1288, 1292–93 (11th Cir.2003) (per curiam); *Lovell v. Chandler,* 303 F.3d 1039, 1051–52 (9th Cir.2002); *Robinson v. Kansas,* 295 F.3d 1183, 1189–90 (10th Cir.2002); *Nihiser v. Ohio EPA,* 269 F.3d 626, 628 (6th Cir.2001); *Jim C. v. United States,* 235 F.3d 1079, 1081 (8th Cir.2000) (en banc); *Stanley v. Litscher,* 213 F.3d 340, 344 (7th Cir.2000).

As the Department points out, § 102 of the Rehabilitation Act, unlike § 504 of the same act, contains no express or clear statement that states waive their immunity. Hurst's citation to the Fifth Circuit's holding in *AT&T* to support her contention that the judicial review requirement of § 722(c)(5)(J)(i) constitutes a clear statement of Eleventh Amendment immunity waiver is not necessarily on point. In *AT&T,* the Fifth Circuit found that the Louisiana Public Service Commission constructively waived its sovereign immunity by accepting Congress's invitation to regulate local telecommunication competition under the Telecommunications Act of 1996. However, unlike the instant case, courts addressing sovereign immunity issues arising from the Telecommunications Act of 1996 were dealing with a statute in which "Congress, by enacting the 1996 Act pursuant to its commerce power, validly preempted the states' power to regulate local telecommunications competition." *AT&T Comm.,* 238 F.3d at 646 (citing *AT&T Corp. v. Iowa Utils. Bd.,* 525 U.S. 366, 378 n. 6, 119 S.Ct. 721, 142 L.Ed.2d 835 (1999)).

The Telecommunications Act invited the states to engage in "a limited mission, which they may accept or decline: to apply federal law and regulations as arbitrators and ancillary regulators within the federal system and on behalf of Congress." *Id.* (citing 42 U.S.C. § 252; however, intending to cite 47 U.S.C. § 252). A portion of that invitation included being subject to federal judicial review under the Telecommunications Act pursuant to 47 U.S.C. § 252(e)(6). Therefore, the states were put on notice, and the Telecommunications Act provided a clear statement, that if the states wished to accept this limited mission, they had to acquiesce to the waiver of their Eleventh Amendment immunity.

The Court is in agreement with the Department that the Rehabilitation Act of 1973 is distinguishable from the Telecommunications Act of 1996, because it does not involve any preemption of states' powers. The Rehabilitation Act's purpose is "to empower individuals with disabilities to maximize employment, economic self-sufficiency, independence, and inclusion and integration into society ...." 29 U.S.C. § 701(b)(1). The Act further crystalizes its objective as one of ensuring "that the Federal Government plays a leadership role in promoting the employment of individuals with disabilities, especially individ-

uals with significant disabilities, and in *assisting States and providers of services* in fulfilling the aspirations of such individuals with disabilities for meaningful and gainful employment and independent living." 29 U.S.C. § 701(b)(2) (emphasis added). With regards to the Rehabilitation Act, Congress has made it clear that it is supporting the states through its obligation to provide for the "general welfare" of the nation. Congress did not preempt any states' powers and then invite the states to participate in any activities under § 102 of the Rehabilitation Act by conditioning the participation with the waiver of their sovereign immunity through § 722(c)(5)(J)(i).

 Congress has not established any clear intent that would put the states on notice that they are waiving Eleventh Amendment immunity under § 102. The 1998 amendments to § 102 of the Rehabilitation Act, specifically § 722(c)(5)(J)(i), simply do not rise to the level of a clear statement that is required of legislation enacted through Congress's Article I Spending Clause powers. As the Fifth Circuit has ruled, in its interpretation of Supreme Court precedent of the clear-statement rule, "[i]n our reading ... the only 'knowledge' that the Court is concerned about is a state's knowledge that a Spending Clause condition requires waiver of immunity ...." *Pace*, 403 F.3d at 279. Congress has met this burden in § 504, through 42 U.S.C. § 2000d–7, and in other instances, including 20 U.S.C. § 1403(a) [8] as applied to the Individuals with Disabilities Education Act ("IDEA") ("20 U.S.C. § 1400 et seq."). Congress, when it amended § 102 in 1998 and provided for judicial review in Federal court of states' final administrative decisions, had the ability to afford § 102 with the same clear statement of potential Eleventh Amendment immunity implications that it gave to § 504 and the IDEA Act. The fact that Congress chose not to do so indicates to this Court that § 722(c)(5)(J)(i), and its option of judicial review of a final state administrative decision, is not to be viewed through the same prism as the remedial in nature 29 U.S.C. § 794a or 20 U.S.C. § 1403.

This Court recognizes the Fifth Circuit's statement that "[j]ust because particular language may or may not function with equal efficacy under both exceptions to Eleventh Amendment immunity, does not mean that it fails the clear-statement rule," *id.* at 287. This Court further recognizes the Fifth Circuit's admonishment that Congress need not use precise or "magical" words to signal to the states an abrogation or invitation to waive immunity. However, this Court does not read Fifth Circuit precedent to signify that any reference, however slight, to "Federal courts"—such as § 722(c)(5)(J)(i)—satisfies the "clear-statement" rule.

Unfortunately for Hurst, Congress has not met the clear-statement burden regarding § 102. Thus, because Congress has not provided a clear statement that it was conditioning the receipt of federal funds in return for states' waiver of Eleventh Amendment immunity, the states have had, and continue to have, the ability to invoke Eleventh Amendment immunity because of the lack of opportunity to make a knowing and voluntary waiver of their Eleventh Amendment immunity. This Court does not retain subject matter jurisdiction under § 722(c)(5)(J)(i) so long as Texas refuses to abdicate its constitutional

---

**8.** § 1403. Abrogation of State sovereign immunity

 (a) In general. A State shall not be immune under the 11th amendment to the Constitution of the United States from suit in Federal court for a violation of this title [20 U.S.C. §§ 1400 et seq.].

prerogative to Eleventh Amendment sovereign immunity.

## III. CONCLUSION

The Court, based on the reasons previously stated, **DOES NOT ADOPT** the Report and Recommendation of the United States Magistrate Judge. Due to the novelty of the issue at hand and the possibility of further review by appellate courts, it is hereby **ORDERED** that the Defendants' motion to dismiss is **GRANTED** and the Plaintiff's case is **DISMISSED WITHOUT PREJUDICE.** The Defendants' request that all costs in this case be assessed against the Plaintiff is **DENIED.**