United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 26, 2007**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 05-51656

LOUISE ELIZABETH HURST

Plaintiff - Appellant

VERSUS

TEXAS DEPARTMENT OF ASSISTIVE AND REHABILITATIVE SERVICES,
also known as DARS; TERRY MURPHY, Commissioner of DARS

Defendants - Appellees

Appeal from the United States District Court
For the Western District of Texas

Before DAVIS and STEWART, Circuit Judges, and CRONE*, District Judge.

W. EUGENE DAVIS, Circuit Judge:

This case presents the question of whether the State of Texas waived its Eleventh Amendment immunity to suit in federal court by accepting federal funding to support its Vocational Rehabilitation Program under Title I of the Rehabilitation Act, 29 U.S.C. § 701-796. The district court agreed with the State of Texas that 29 U.S.C. § 722(c)(5)(J)(i) did not represent a clear-statement of

---

*District Judge of the Eastern District of Texas, sitting by designation.

congressional intent to condition the State's receipt of federal funds upon the State's waiver of Eleventh Amendment immunity. We affirm.

## I.

### BACKGROUND.

Appellant, Louise Elizabeth Hurst (Hurst), filed this suit in district court to review the denial of medical treatment by the Texas Rehabilitation Commission (now the Texas Department of Assistive and Rehabilitative Services, also referred to DARS). Appellant exhausted all available remedies which culminated in an administrative hearing before an administrative law judge who affirmed the denial of medical services and the denial of a motion for reconsideration of that decision.

The defendants in the district court responded to Hurst's suit with a motion to dismiss, based on Eleventh Amendment immunity of the State of Texas to suit in federal court. The magistrate judge to whom the motion was referred found that Congress in §722(c)(5)(J)(i) clearly conditioned the State's receipt of federal funds under this program upon the State's waiver of Eleventh Amendment immunity. DARS filed objections to the magistrate judge's recommendation. The district court declined to accept the magistrate judge's recommendation and dismissed the case without prejudice on grounds that Congress had not clearly declared its intent to condition the State's receipt of federal funds upon the

2

State's waiver of Eleventh Amendment immunity. Hurst challenges the district court's ruling in this appeal.

## II.

### WAIVER OF ELEVENTH AMENDMENT IMMUNITY BY A STATE.

The Eleventh Amendment to the United States Constitution states "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S.C.S. Const. Amend. 11. There are two well-established exceptions to Eleventh Amendment immunity. First, Congress can abrogate Eleventh Amendment immunity without a state's consent when acting under its authority under the enforcement provisions of § 5 of the Fourteenth Amendment. Atascadero State Hospital v. Scanlon, 473 U.S. 234, 238 (1985). Second, a state may waive its immunity and consent to suit in federal court. Id. One way a state may waive its Eleventh Amendment immunity is by accepting federal funds disbursed pursuant to Congress's Article I, § 8 spending power that were properly conditioned on the state forgoing its sovereign immunity. Id., n.1; Pederson v. Louisiana State Univ., 213 F.3d 858, 876 (5th Cir. 2000). Hurst argues that the state of Texas has waived its immunity by accepting federal funding of its Vocational Rehabilitation Program, under Title I of the Rehabilitation Act. 29 U.S.C. § 701-796.

A state's receipt of federal funds does not automatically constitute a waiver of its Eleventh Amendment immunity. The Supreme Court in South Dakota v. Dole, 483 U.S. 203 (1987) described the limited circumstances in which a waiver will be recognized:

> (1) Federal expenditures must benefit the general welfare;
>
> (2) The conditions imposed on the recipients must be unambiguous;
>
> (3) The conditions must be reasonably related to the purpose of the expenditure; and
>
> (4) No condition may violate any independent constitutional prohibition.

Pace v. Bogalusa City Sch. Bd., 403 F.3d 272, 278 (5th Cir. 2005), citing Dole, 483 U.S. at 207-08. Dole also recognizes a fifth requirement that the condition may not be coercive. Id. DARS concedes that the Rehabilitation Act satisfies four of the five elements of this test. The parties dispute whether the second requirement, of an unambiguous statement, has been met.

A state waives its immunity by voluntarily participating in federal spending programs only when Congress includes a clear statement of intent to condition participation in the programs on a State's consent to waive its constitutional immunity. Atascadero, 473 U.S. at 247. "By insisting that congress speak with a clear voice, we enable the States to exercise their choice [to waive sovereign immunity] knowingly." Pace, 403 F.3d at 279

4

(quoting Pennhurst State Sch. & Hosp. v. Halderman, 451 U.S. 1, 17).  In seeking to determine whether the language of a condition is sufficiently clear, courts must view the statute "from the perspective of a state official who is engaged in the process of deciding whether the state should accept [federal] funds and the obligations that go with those funds," asking "whether . . . a state official would clearly understand [the nature of the condition]."  Arlington Cent. Sch. Dist. Bd. Of Educ. v. Murphy, ___ U.S. ___, 126 S.Ct. 2455, 2459 (2006).  "In a Spending Clause case, the key is not [the intention of Congress] but what the States are clearly told regarding the conditions that go along with the acceptance of . . . funds."  Id.  at 2463.  A statute must furnish "clear notice regarding the liability at issue" to which the state has allegedly waived its immunity.  Id. at 2459.

Hurst argues that § 102 of the Rehabilitation Act codified at 29 U.S.C. § 722(c)(5)(J)(i) provides a clear-statement of intent to require a state to waive its Eleventh Amendment immunity in order to receive federal funds based on the underlined language in this subsection of § 722:

> (i) in general.  Any party aggrieved by a final decision described in subparagraph (I), may bring a civil action for review of such decision. The action may be brought in any state court of competent jurisdiction or in a district court of the United States of competent jurisdiction without regard to the amount in controversy. (Emphasis added.)

29 U.S.C. § 722(c)(5)(J)(i)(underlining added).  We have found no

federal circuit court decisions addressing the specific issue presented in this case, i.e. whether the above quoted provision satisfies the clear statement rule.[1]  Fortunately, the United States Supreme Court has addressed this issue in regard to a different section of the Rehabilitation Act with language very similar to that used in § 722.

In Atascadero the statute in question provided that:

> the remedies, procedures and rights set forth in Title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.] [including the right to sue in federal court to enforce obligations imposed under the statute] shall be available to any person aggrieved by any act or failure to act by any recipient of federal assistance or federal provider of such assistance under section 504 [29 U.S.C. § 794] of this title.

29 U.S.C. § 794a.  In finding a lack of federal jurisdiction under the Eleventh Amendment, the Court reasoned that "a general authorization for suit in federal court is not the kind of unequivocal statutory language sufficient to abrogate the Eleventh Amendment."  Atascadero, 473 U.S. at 246.  The court also considered whether the above statute could support a conclusion

---

[1]  Several district courts have addressed this question.  *See* Hurst v. Tex. Dep't of Assistive & Rehab. Serv., 392 F. Supp. 2d 794, 801–02 (W.D. Tex. 2005) (pending the instant appeal); White v. Vocational Rehab., No. Civ. 04-842-HU, 2004 WL 3049760, at *2 (D. Or. Dec. 20, 2004); *adopted by* No. CV-04-842-HU, 2005 WL 771395 (D. Or. Apr. 5, 2005), *aff'd on other grounds by* No. 05-35439, 2006 WL 2633720 (9th Cir. Sept. 14, 2006); Richards v. Alibozek, No. CV010510286S, 2002 WL 1815918, at *5-6 (Conn. Super. Ct. June 26, 2002); *see also* Diamond v. Michigan, 431 F.3d 262 (6th Cir. 2005); Reaves v. Mo. Dep't of Elem. & Secondary Educ., 422 F.3d 675 (8th Cir. 2005).

that the State consented to suit in federal court by accepting funds under § 504 of the Rehabilitation Act. The Court rejected the reliance by the Ninth Circuit Court of Appeals on the fact that the states were the express intended recipients of federal assistance and that the statute authorized suits by designated plaintiffs against a general class of defendants which literally included States or state instrumentalities as consent by the State to be sued in federal court. Id. at 247. Rather it concluded that the statute "[fell] far short of manifesting a clear intent to condition participation in the programs funded under the Act on a State's consent to waive its constitutional immunity." Id.[2] Hurst's argument is indistinguishable from the argument rejected in Atascadero and the statutory language at issue in this case is similarly indistinguishable from the language at issue in Atascadero.

Hurst seeks to distinguish Atascadero on the basis that the

_____

[2]    In response to Atascadero, Congress passed additional legislation including a clear-statement of its intent to condition the receipt of federal funds upon a State's waiver of sovereign immunity for liability incurred under § 504 of the Rehabilitation Act. The statute now provides:

> A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973, title IX of the Education Amendments of 1972, the Age Discrimination Act of 1975, title VI of the Civil Rights Act of 1964, or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.

42 U.S.C. § 2000d-7.

statute at issue there provided a federal court remedy against "any recipient of federal assistance or federal provider of such assistance" without expressly extending such liability to States. Hurst points out that by contrast the statutory framework in this case specifically makes acts by a "designated State unit" subject to judicial review in state or federal courts. 29 U.S.C. § 722(c). Hurst is correct that Congress's lack of specificity concerning the entity or entities it wished to subject to liability influenced the Court's decision in Atascadero. But Congress's abrogation of state immunity was also an issue in that case and the lack of specificity was discussed in its consideration of the abrogation issue, not the waiver issue. The court stated,

> The statute thus provides remedies for violations of § 504 by "any recipient of Federal assistance." There is no claim here that the State of California is not a recipient of federal aid under the statute. But given their constitutional role, the States are not like any other class of recipient of federal aid. A general authorization for suit in federal court is not the kind of unequivocal statutory language sufficient to abrogate the Eleventh Amendment.

Atascadero, 473 U.S. at 245-46.

Hurst also relies on AT&T Communications v. Bellsouth Telecomm. Inc., 238 F.3d 636 (5th Cir. 2001), as supporting her assertion that the language of § 722(c)(5)(J)(i) makes a clear statement of the state's consent to suit. Ms. Hurst's reliance on AT&T is misplaced. Although AT&T involves voluntary waiver by a State of its rights under the Eleventh Amendment, the nature of the

8

Telecommunications Act interpreted in that case makes its clearly distinguishable from the Rehabilitation Act at issue in this case. In 1996 Congress exercised its constitutional authority to create a national regulatory scheme for telecommunications. In that act, the Federal Telecommunications Act of 1996, Congress preempted State and local regulation of telecommunications. 47 U.S.C. § 151 et. seq. The States were permitted to play a limited role in the regulatory process and only as dictated by the FCC. State public service commissions had the option of approving or rejecting any interconnection agreement adopted by carriers. If the state chose to approve or reject such an agreement and made a determination under the act, a party aggrieved by the determination could challenge it in an action in federal district court under the following provision:

> In any case in which a State commission makes a determination under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirement of section 251 of this title and this section.

47 U.S.C. § 252(e)(6). Significantly, Congress gave exclusive jurisdiction to federal courts to review the commission's orders and appeals to state courts were prohibited. The Court stated "Congress may still obtain a non-verbal waiver of a state's Eleventh Amendment immunity, if the waiver can be inferred from the state's conduct in accepting a gratuity after being given clear and unambiguous statutory notice that it was conditioned on waiver of

9

immunity." AT&T, 238 F.3d at 645, citing MCI Telcoms. Corp. v. Illinois Bell Tel. Co., 222 F.3d 323, 339 (7th Cir. 2000). Non-verbal waiver was found principally on the basis of the state's acceptance of an offer from Congress to act in an area otherwise preempted by federal regulation, which state action was unambiguously subject to review only in a federal court. The pervasiveness of the federal preemption and the exclusivity of the federal appeal make clear that participation by the state in the federal regulatory scheme entailed waiver of immunity from suit in federal court.[3]

---

[3]In the MCI case, which the AT&T court relied upon, the Court stated, in finding a voluntary waiver of Eleventh Amendment immunity for the Telecommunications Act:

Although the language of the statute does not contain the express waiver language that the commissions seek, the structure of the pertinent section of the statute, notably 47 U.S.C. § 252 (Supp. II 1996),nevertheless makes clear that Congress intended to provide for federal court review of any regulatory determination made under the section, whether by a state commission or, if the state commission chooses not to act, by the FCC acting in its place.

  . . .

In short, Congress has expressed unmistakably that, under the 1996 Telecommunications Act, states could participate in the federal regulatory function delegated to them by the federal government on the condition that their participation be reviewable in federal court. We therefore conclude that the 1996 Telecommunications Act satisfies the requirement that Congress clearly state that participation by the state in the regulatory scheme entails a waiver of immunity from suit in federal court. Accord MCI Telecomms. Corp. v. Public Serv. Comm'n, 216 F.3d 929, 938 (10th Cir.2000) (concluding that § 252 puts states on notice that Congress intends to subject them to suit in federal court if they act under § 252).

MCI Telecoms. Corp. v. Illinois Bell Telephone Co., 222 F.3d 323, 341-42 (7th Cir. 2000).

This case contains neither of those elements. The Rehabilitation Act is not a comprehensive regulatory scheme preempting state action. States are free to offer similar services with or without participation in the federal program. In addition, Section 722(c)(5)(J)(i), which Hurst relies on, specifically allows suits in state courts. In other words, unlike AT&T, this is not a case where "the state has been put on notice clearly and unambiguously by the federal statute that the state's particular conduct or transaction will subject it to federal court suits brought by individuals." AT&T, 238 F.3d at 644.

Ms. Hurst contends finally that DARS voluntarily waived its Eleventh Amendment immunity through the adoption of rules for judicial review. She points out that prior to the enactment of the Rehabilitation Act amendments of 1998 the TRC rules only allowed judicial review in Texas state district courts in Travis County, Texas. However, after Congress enacted the 1998 amendments to Title I of the Rehabilitation Act the TRC adopted amendments to § 104.8 to provide for judicial review in federal court as well as in state court. Hurst argues that DARS predecessor clearly conducted itself as if it "knew" that it was required to allow federal judicial review of its final decisions. We rejected a similar "knowing acceptance of federal funds" argument in Pace:

> Knowledge by the state equates with the clarity of the statement of the requirement in the federal law, not a subjective knowledge standard.

Pace, 403 F.3d at 285.

11

## III.

## CONCLUSION

Section 102 of the Rehabilitation Act does not contain the necessary "clear-statement" requiring a waiver of Eleventh Amendment immunity if the State of Texas accepts federal funds for this program.  Neither has Texas voluntarily waived its Eleventh Amendment immunity for this program.  We, therefore, affirm the judgment of the district court dismissing this suit.

AFFIRMED.