

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-20-00212-CV

———————————————

TONI MARIE BULLOCK, Appellant

V.

THE UNIVERSITY OF TEXAS AT ARLINGTON, Appellee

On Appeal from the 17th District Court
Tarrant County, Texas
Trial Court No. 017-312640-19

Before Sudderth, C.J.; Kerr and Womack, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

This is an appeal from an order granting Appellee The University of Texas at Arlington's plea to the jurisdiction and dismissing Appellant Toni Marie Bullock's claims against it for alleged violations of the Rehabilitation Act and Americans with Disabilities Act (ADA). We affirm.

## II. BACKGROUND

According to her pleadings, Bullock was a student at UTA who "suffers from severe major depressive disorder and post-traumatic stress disorder." After requesting extended time for examinations and to complete assignments, Bullock was given an accommodation letter[1] from UTA granting her the following accommodations:

- Occasional extension of due dates

- Instructor to provide copies of overhead materials

- Permit tests/quizzes to be taken in a reduced-distraction environment

- Absence leniency

- Tardiness leniency

- Allow audio recording of all lecture material

---

[1]The first accommodation letter was dated September 19, 2018. On October 15, 2019, UTA gave Bullock an additional accommodation letter.

- Extended time (2X) for in-class and online TIMED work (tests, quizzes, pop quizzes, writing assignments)

- Permit tests/quizzes to be taken in the ARC[2] (subject to availability)

Bullock claimed that she sent the accommodation letter to one of her professors, but the professor denied receiving it because it was sent to her personal rather than professional email address.

After Bullock sent a new accommodation letter to the professor, the professor acknowledged receipt of both letters, but according to Bullock, refused to retroactively apply the letter, "resulting in negative grades" for Bullock. In Bullock's words, her "emotional condition deteriorated" and "her performance suffered in ALL classes for the Fall 2018 semester which were all taught by that same professor." Thereafter, Bullock stated that she "was also forced to file a Complaint with the United States Department of Education, Office for Civil Rights (OCR), alleging violations of the Rehabilitation Act of 1973 [ ](Section 504), 29 U.S.C. §794 (amended 1992), Title II of the [ADA] of 1990 (Title II), 42 U.S.C. §12132."

While OCR was investigating, UTA offered to settle the complaint, and a resolution agreement was entered on July 17, 2019. Bullock contends that under the agreement,

> UTA agreed to allow [Bullock] to re-take the courses that she previously took with her accommodations being denied at no additional cost to her,

---

[2]"ARC" is not defined or described in the record.

to utilize the new grade she made in the courses in calculating her GPA, and making other adjustments requested by [Bullock], as well as refunding her tuition and fees related to one of the courses. UTA also agreed to take other actions, including conducting training on its obligation under Section 504 and Title II.

According to Bullock, by taking this action, UTA was able to stop OCR's investigation of her complaint and "head off an adverse finding."

While acknowledging the agreement and accommodations, Bullock alleged that because OCR does not seek to recover damages for the complaints it investigates, there was no provision for making her "whole" after she suffered "severe emotional distress" and a one-year delay in her education as she dealt with the complaint. Therefore, Bullock filed suit against UTA, alleging that "UTA's actions in failing and refusing to accommodate [her] disabilities" constituted a violation of the Rehabilitation Act and the ADA. Bullock asserted no causes of action under state law. She claimed damages due to "stress, panic attacks and depression, all of which have negatively impacted her emotional condition and self-esteem." UTA answered the suit with a general denial and affirmative defenses, including sovereign immunity.

Several months after answering, UTA filed a plea to the jurisdiction in which it asserted that Bullock's lawsuit was barred by sovereign immunity and Eleventh Amendment immunity. Bullock responded to the plea. After a hearing on the plea, the trial court took the matter under advisement. The trial court later signed an order granting the plea "without prejudice to the refiling of the claims included herein, in whole or in part, in federal court." Bullock appeals from this order.

4

On appeal, Bullock poses two questions: (1) Did Congress clearly and unambiguously express its intent that States must consent to waive immunity before receiving federal funds under a federal-state spending program through the Rehabilitation Act and the ADA statutes? and (2) Did UTA knowingly and voluntarily waive its immunity thereby consenting to suit by accepting conditionally-given federal funds under the Rehabilitation Act and the ADA? UTA phrases the issue, "Did the trial court commit error in granting UTA's Plea to the Jurisdiction in light of Bullock's failure to overcome sovereign immunity in response to a lawsuit asserting only federal causes of action brought in state court against a state agency?" We conclude that immunity was not waived and that the trial court did not err in granting UTA's plea to the jurisdiction.

## III. DISCUSSION

### A. Standard and Scope of Review

A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject matter jurisdiction. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The claims asserted may form the context in which a dilatory plea is raised, but the plea should be decided without delving into the merits of the case. *Id.* Whether a court has subject matter jurisdiction is a legal question. *State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002).

The burden is on the plaintiff to plead facts affirmatively demonstrating the trial court's jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226

5

(Tex. 2004). A trial court's ruling on a plea to the jurisdiction is reviewed de novo. *Suarez v. City of Tex. City*, 465 S.W.3d 623, 632 (Tex. 2015).

## B. Sovereign Immunity and the Eleventh Amendment

UTA is part of The University of Texas System and is under the management and control of the board of regents of The University of Texas System. Tex. Educ. Code Ann. §§ 65.02(a)(1), 68.01–.02. State universities are agencies of the State; therefore, UTA is protected by the doctrine of sovereign immunity. *Nkansah v. Univ. of Tex. at Arlington*, No. 02-10-00322-CV, 2011 WL 4916355, at *3 (Tex. App.—Fort Worth Oct. 13, 2011, pet. denied) (per curiam) (mem. op. on reh'g); *see also Univ. Interscholastic League v. Sw. Officials Ass'n, Inc.*, 319 S.W.3d 952, 957 (Tex. App.—Austin 2010, no pet.) ("The University of Texas was created by the Texas Constitution, *see* Tex. Const. art. VII, § 10, and it is well settled that state universities are governmental entities."). Sovereign immunity deprives a trial court of subject matter jurisdiction for lawsuits in which the State or certain governmental units have been sued unless the State consents to suit. *Nkansah*, 2011 WL 4916355, at *3.

While the State can expressly waive its immunity, it must do so by "clear and unambiguous" language. Tex. Gov't Code Ann. § 311.034 ("In order to preserve the legislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language."); *see also Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 384 (Tex. 2016) ("The state or governmental unit can

6

be sued only if the Legislature waives immunity in 'clear and unambiguous language.'"). Bullock has failed to cite to any authority indicating that the Texas Legislature has clearly and unambiguously waived the state's sovereign immunity.

Eleventh Amendment immunity[3] protects nonconsenting states from being sued in their own courts for federal law claims. *Hoff v. Nueces County*, 153 S.W.3d 45, 48 (Tex. 2004) (per curiam). The Eleventh Amendment to the U.S. Constitution states, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. States "retain immunity from private suit in their own courts, an immunity beyond the congressional power to abrogate by Article I legislation." *Alden*, 527 U.S. at 754, 119 S. Ct. at 2266.

There are two well-established exceptions to Eleventh Amendment immunity. *Hurst v. Tex. Dep't of Assistive & Rehab. Servs.*, 482 F.3d 809, 810 (5th Cir.), *cert. denied*, 552 U.S. 989, 128 S. Ct. 490 (2007). First, Congress can abrogate Eleventh Amendment immunity without a state's consent when acting pursuant to its authority

---

[3]The United States Supreme Court has noted that "Eleventh Amendment immunity" is "convenient shorthand but something of a misnomer, for the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment." *Alden v. Maine*, 527 U.S. 706, 713, 119 S. Ct. 2240, 2246 (1999). Rather, States' immunity from suit is a "fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today . . . except as altered by the plan of the Convention or certain constitutional Amendments." *Id.* at 713, 119 S. Ct. at 2246–47.

under the enforcement provisions of Section 5 of the Fourteenth Amendment. *Id.* (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 247, 105 S. Ct. 3142, 3149–50 (1985), *superseded on other grounds, as recognized in Lane v. Pena*, 518 U.S. 187, 198, 116 S. Ct. 2092, 2099 (1996)). Second, a state may waive its immunity and consent to suit in federal court. *Id.* One way a state can waive its Eleventh Amendment immunity is by accepting federal funds that were disbursed under Congress's Article I, Section 8 spending power and were properly conditioned on the state forgoing its sovereign immunity. *Id.* However, a state's receipt of federal funds does not automatically constitute a waiver of its Eleventh Amendment immunity. *Id.* at 811.

## C. Application of Law to Facts

Bullock makes no argument and cites to no authority that the Texas Legislature has expressly waived the State's sovereign immunity[4] or that Congress abrogated Texas's immunity under the enforcement provisions of the Fourteenth Amendment. Instead, she contends in her first issue that Congress clearly and unambiguously conditioned acceptance of federal funds on a state's waiver of immunity, and she contends in her second issue that UTA's acceptance of federal funds was thus a knowing and voluntary waiver of its immunity. Bullock's arguments under these issues turn on language in the Rehabilitation Act and the ADA. Specifically, she relies on "Section 504 of the Rehabilitation Act and [t]he ADA statutes 42 U.S.C. §§ 12231

---

[4]On appeal, Bullock concedes in her brief that "[t]here is no question that the State of Texas has sovereign immunity."

8

and 12202" for her proposition that "no state that accepts Federal financial assistance shall be immune in federal or state court from an action for violations of those codes." UTA responds that it is a state agency entitled to sovereign immunity, that there has been no clear and unambiguous waiver of sovereign immunity in this case, and that Eleventh Amendment immunity prevents it from being sued in state court for damages for violation of federal law. We agree with UTA.

### 1. The Rehabilitation Act

The applicable portion of the Rehabilitation Act states, "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C.A. § 794(a). It also contains a judicial review provision in one subsection of Section 722:

> Any party aggrieved by a final decision described in subparagraph (I), may bring a civil action for review of such decision. The action may be brought in any State court of competent jurisdiction or in a district court of the United States of competent jurisdiction without regard to the amount in controversy.

*Id.* § 722(c)(5)(J)(i).

In its examination of this provision in *Hurst,* the Fifth Circuit addressed the question of whether the State of Texas waived its Eleventh Amendment immunity to suit in federal court by accepting federal funding to support its Vocational Rehabilitation Program under Title I of the Rehabilitation Act. 482 F.3d at 810; *see*

9

*also* 29 U.S.C.A. §§ 701–796.  In that case, Hurst filed suit to review the denial of medical treatment by the Texas Rehabilitation Commission (now the Texas Department of Assistive and Rehabilitative Services), arguing that the State of Texas had waived its immunity.  *Hurst*, 482 F.3d at 811.  Specifically, Hurst argued that the judicial review provision provides a clear statement of intent to require a state to waive its Eleventh Amendment immunity in order to receive federal funds.  *Id.*

In deciding the case, the Fifth Circuit first noted that the United States Supreme Court had previously addressed a different section of the Rehabilitation Act with very similar language, finding that it was merely a general authorization for suit—not a "clear-statement of intent"—that did not waive Eleventh Amendment immunity.  *Id.* at 811–12 (citing *Atascadero*, 473 U.S. at 247, 105 S. Ct. at 3149–50).  In affirming the lower court's dismissal of the suit, the court determined that the judicial review provision "does not contain the necessary 'clear-statement' requiring a waiver of Eleventh Amendment immunity if the State of Texas accepts federal funds for this program.  Neither has Texas voluntarily waived its Eleventh Amendment immunity for this program."  *Id.* at 814.

Our sister appellate court has agreed with the Fifth Circuit's holding that with the judicial review provision, Congress has not clearly stated that by accepting federal funds, the State of Texas would waive its Eleventh Amendment immunity.[5]  *Hurst,*

---

[5]While not binding on this court as a United States Supreme Court decision, the Fifth Circuit's pronouncements are "persuasive authority."  *Hurst v. Tex. Dep't of*

10

2008 WL 4667355, at *9. The Corpus Christi court expressly agreed with the Fifth Circuit that the judicial review provision was a "general authorization for suit" and not a clear statement by Congress that states were waiving sovereign immunity by accepting federal funds. *Id.* at *8 (citing *Hurst*, 482 F.3d at 812). We agree with these courts that the Rehabilitation Act sections relied on by Bullock do not condition the acceptance of federal funds on a state's waiver of immunity.

Bullock also argues that 42 U.S.C.A. Section 2000d-7(a) of the Civil Rights Act of 1964 abrogates a state's Eleventh Amendment immunity for violations of certain statutes, including the Rehabilitation Act. That statute provides in part,

> A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit *in Federal court* for a violation of section 504 of the Rehabilitation Act of 1973 . . . or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.

42 U.S.C.A. § 2000d-7(a) (emphasis added).

However, at least one Texas court has examined this provision and held that a "state's receipt of federal financial assistance does not automatically constitute a waiver of its immunity under the Eleventh Amendment." *Univ. of Tex. at Dallas v. Matney*, 280 S.W.3d 882, 884 (Tex. App.—Dallas 2009, no pet.). Instead, a waiver is only recognized in limited circumstances, one of which requires that any condition

---

*Assistive & Rehabilitative Servs.*, No. 13-06-332-CV, 2008 WL 4667355, at *8 (Tex. App.—Corpus Christi 2008, no pet.) (mem. op.) (citing *Brooks v. Ctr. for Healthcare Servs.*, 981 S.W.2d 279, 286 (Tex. App.—San Antonio 1998, no pet.)).

imposed on the recipients must be stated "clearly and unambiguously" in the statute. *Id.*

And in *Wion v. Thayler*, the Waco court of appeals, citing Section 2000d-7, pointed out that there is no waiver of state immunity to suits brought in state courts under the Rehabilitation Act. No. 10-09-00369-CV, 2010 WL 4644497, at *3 (Tex. App.—Waco Nov. 17, 2010, no pet.) (mem. op.); *see also* 42 U.S.C.A. § 2000d-7(a) ("A State shall not be immune under the Eleventh Amendment . . . from suit *in Federal court* for a violation of section 504 of the Rehabilitation Act . . . ." (emphasis added)).[6] We agree that Section 2000d-7, on its face, does not clearly and unambiguously condition acceptance of federal funds on a state's waiver of immunity for federal claims in state court, and we overrule Bullock's issues as to her Rehabilitation Act claims.

### 2. The ADA

Bullock also argues that under the ADA, Congress has clearly conditioned acceptance of funds on a state's waiver of immunity. Title II of the ADA authorizes suits by private citizens for money damages against public entities that violate Section

---

[6]In another opinion by a sister appellate court, the Corpus Christi court examined whether there was a waiver of immunity in a suit brought by an individual who alleged that he was denied an American Sign Language interpreter at aide eligibility interviews. *Schraer v. Tex. Health & Human Servs. Comm'n*, No. 13-12-00702-CV, 2014 WL 586036, at *6 (Tex. App.—Corpus Christi Feb. 13, 2014, no pet.) (mem. op.). In its review of a plea to the jurisdiction granted to the Texas Health and Human Services Commission and its Executive Commissioner, the court held that "sovereign immunity bars Schraer's ultra vires claims under Title II of the ADA and Section 504 of the Rehabilitation Act." *Id.*

12132 of the Act.  *See* 42 U.S.C.A. § 12133 ("The remedies, procedures, and rights set forth in section 794a of Title 29 shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of section 12132 of this title."); *Wion,* 2010 WL 4644497, at *2.  The waiver provision of the ADA provides, "A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter."  42 U.S.C.A. § 12202; *Wion*, 2010 WL 4644497, at *2.

To determine whether Congress has unambiguously conditioned acceptance of funds on a state's waiver of immunity, courts apply a five-part test: (1) the federal expenditure must be in pursuit of the general welfare; (2) any condition on the state's receipt of federal funds must be unambiguous, enabling the states to exercise their choice knowingly, "cognizant of the consequences of their participation"; (3) any condition must be reasonably related to the purpose of the federal grant; (4) the grant and any conditions cannot violate other constitutional provisions; and (5) the grant and its conditions cannot amount to coercion as opposed to encouragement.  *See South Dakota v. Dole*, 483 U.S. 203, 206–07, 107 S. Ct. 2793, 2796–97 (1987); *Gruver v. La. Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll.*, 959 F.3d 178, 182 (5th Cir. 2020), *cert. denied,* 141 S. Ct. 901 (2020).

Bullock's brief cites to *Dole* and states that there is a five-prong test but contains no discussion or analysis of how the test applies to the ADA, and she fails to

13

cite to any authority holding that sovereign immunity has been "clearly and unambiguously" waived for ADA claims brought in state court against a state agency. Neither *Dole* nor a Fifth Circuit case cited by Bullock authorized suits against a state or one of its agencies in state court. *See Dole*, 483 U.S. at 206–07, 107 S. Ct. at 2796–97; *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272 (5th Cir. 2005). Therefore, we reject Bullock's arguments that, by accepting federal funds, UTA has waived its sovereign immunity in state court for her claims against it for alleged violations of the ADA, and we overrule the remainder of her issues. *See Miranda*, 133 S.W.3d at 226 (holding plaintiff has burden to show trial court's jurisdiction).

## IV. CONCLUSION

We affirm the trial court's order granting UTA's plea to the jurisdiction and dismissing Bullock's claims.

/s/ Dana Womack

Dana Womack
Justice

Delivered: May 20, 2021

14