**NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, et al., Petitioners,**

v.

**Joscelin YEO, Respondent.**

**No. 03–0753.**

Supreme Court of Texas.

Argued Jan. 4, 2005.

Decided Aug. 26, 2005.

Susan Bradshaw, University of Texas at Austin, Legal Affairs, John F. Morehead,

Asst Atty. Gen., Robert B. O'Keefe, Greg Abbott, Atty. Gen., Barry Ross McBee, Rafael Edward Cruz, Jeffrey S. Boyd, Thompson & Knight, Robert B. O'Keefe, Don Wayne Cruse Jr., Asst. Solicitor Gen., Edward D. Burbach, Austin, Kevin Scott Mullen, Thompson Coe Cousins & Irons, LLP, Dallas, Catherine Christine Cobb Worth, Austin, for University of Texas.

Jose E. De La Fuente, Mark Ryan Trachtenberg and Charles G. Orr, Haynes & Boone, LLP, Houston, W. Wade Porter, Allensworth & Porter, LLP, Austin, Linda J. Salfrank and Jonathan F. Duncan, Spencer Fane Britt & Browns, LLP, Kansas City, MO, for National Collegiate Athletic.

Diane M. Henson, Henson Law Firm, Karl Bayer, Law Office of Karl Bayer, Robert Green Hargrove, Austin, for respondent.

Warren W. Harris, Bracewell & Giuliani, LLP, Houston, Amicus Curiae for American Council on Education.

Justice HECHT delivered the opinion of the Court, in which Chief Justice JEFFERSON, Justice O'NEILL, Justice WAINWRIGHT, Justice BRISTER, Justice MEDINA, Justice GREEN and Justice JOHNSON joined.

Construing the Texas Constitution's guarantee of due course of law,[1] we held twenty years ago in *Spring Branch I.S.D. v. Stamos*, like "the overwhelming majority of jurisdictions" construing other constitutional guarantees of due process, that "students do not possess a constitutionally protected interest in their participation in extracurricular activities."[2] We have endorsed the rule in *Stamos* twice since.[3] Respondent nevertheless contends that because of her unique situation as "the most decorated athlete in the history of the Republic of Singapore", to disqualify her from participating in an intercollegiate swimming competition would deprive her of protected property and liberty interests in her reputation and existing and future financial opportunities in violation of the Texas Constitution. The lower courts agreed, distinguishing this case from *Stamos*.[4] We conclude that the rule in *Stamos* applies and therefore reverse the judgment of the court of appeals and render judgment that respondent take nothing.

When Coach Michael Walker recruited Joscelin Yeo, a high school student in the Republic of Singapore, to enroll at the University of California at Berkeley, she had already achieved fame in her country as a swimmer. At Berkeley, she won numerous All–American awards and was a member of a world-record-setting relay team in 1999.

Before the 2000–2001 school year, Walker left Berkeley for the University of Tex-

---

1. TEX. CONST. art. I, § 19 ("No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land.").

2. 695 S.W.2d 556, 561 (Tex.1985); *accord, In re University Interscholastic League,* 20 S.W.3d 690, 692 (Tex.2000) (per curiam) (holding that the disqualification of a high school from participating in a state baseball tournament did not violate players' constitutional rights); *Eanes Indep. Sch. Dist. v. Logue,* 712 S.W.2d 741, 742 (Tex.1986) (holding that a dispute over who had won a high school baseball playoff series did not implicate constitutional due process rights).

3. *In re University Interscholastic League,* 20 S.W.3d at 692; *Eanes Indep. Sch. Dist. v. Logue,* 712 S.W.2d at 742.

4. 114 S.W.3d 584, 597 (Tex.App.-Austin 2003).

as at Austin ("UT–Austin"). He was helping coach the Singapore Olympic team, of which Yeo was a member, and she went with him to UT–Austin. Berkeley and UT–Austin are both members of the National Collegiate Athletic Association ("NCAA"), which prescribes rules for determining the eligibility of student athletes to engage in competition. A member that violates these rules is subject to sanctions. NCAA rules generally prohibit a student who transfers from one four-year member institution to another from participating in intercollegiate athletic competitions for one full academic year,[5] but this restriction may be waived under certain circumstances if the former institution does not object.[6] Berkeley refused to waive the restriction, and thus Yeo was ineligible to compete at UT–Austin for an academic year.

As permitted by NCAA rules, Yeo did not enroll in classes for the fall semester of 2000 in order to compete in the Olympics.[7] In compliance with the one-year restriction, she did not participate in intercollegiate events during that semester or the spring semester, when she was enrolled in classes. UT–Austin mistakenly believed that Yeo's first semester had counted toward satisfying the restriction and that she was free to engage in competition beginning the fall semester of 2001. After Yeo competed in four events, Berkeley complained to the NCAA. UT–Austin confessed its error and agreed that Yeo would sit out the remainder of the semester, but the NCAA required that she not participate in the first four events the following spring, to match the four events in which she had been disqualified. Yeo did not know of UT–Austin's discussions with the

NCAA and simply did as UT–Austin told her.

UT–Austin then added three swimming events at the beginning of its spring semester schedule. After Yeo had sat out those events and a fourth one, UT–Austin allowed her to rejoin the swim team, but Berkeley again complained, arguing that the added events could not be used to satisfy the one-year restriction. NCAA staff agreed and on March 6 issued a decision that Yeo not participate in the next three regularly scheduled events, including the 2002 NCAA women's swimming and diving championship on March 22. UT–Austin immediately appealed the staff decision to the NCAA Student–Athlete Reinstatement Committee ("the SARC"), and a telephonic hearing was scheduled for the next day. For the first time, UT–Austin told Yeo of the problem and advised her simply to plea for sympathy. She did, but at the conclusion of the hearing, the SARC upheld the staff decision.

At UT–Austin's suggestion, Yeo then obtained legal counsel, who persuaded Berkeley on March 15 to waive Yeo's one-year restriction, something it had refused to do before. Counsel moved the SARC to reconsider, especially in light of this development, but it refused.

On March 20, Yeo sued UT–Austin and its vice president for institutional relations and legal affairs, Patricia Ohlendorf, to enjoin them from disqualifying her from competing in the championship meet two days later and for a declaration that UT–Austin had denied her procedural due process as guaranteed by the Texas Constitu-

---

**5.** 2001–2002 NCAA Division I Manual 158, Bylaw 14.5.5.1. These rules appear substantively unchanged in the 2005–2005 NCAA Division I Manual.

**6.** *Id.* at 160, Bylaw 14.5.5.2.10.

**7.** *See* 2000–2001NCAA Division I Manual at 134, Bylaw 14.1.6.2.2.1.2.

tion. That same day, the trial court issued a temporary restraining order granting Yeo the injunctive relief requested. On March 21, the NCAA intervened in the action, but Yeo moved to strike the intervention, and after a hearing later that day, the trial court granted Yeo's motion. The next morning, the NCAA sought mandamus relief from the court of appeals, and UT–Austin appealed from the temporary restraining order. That afternoon, the court of appeals denied the petition for mandamus [8] and dismissed the interlocutory appeal for want of jurisdiction.[9] Yeo competed in the championship meet.

In November 2002, after a trial to the bench, the trial court rendered judgment for Yeo, declaring that UT–Austin had denied Yeo procedural due process guaranteed by the Texas Constitution, thereby depriving her of protected liberty and property interests. The court permanently enjoined UT–Austin from declaring Yeo ineligible in the future without affording her due process and from punishing her for participating in past competitions, including the 2002 women's championship. The trial court also awarded Yeo $164,755.50 in attorney fees through an appeal to this Court.

The NCAA appealed from the order striking its intervention, and UT–Austin appealed from the judgment. The court of appeals affirmed.[10] We granted the NCAA's and UT–Austin's petitions for review.[11]

■ Since the championship meet in March 2002, Yeo has, of course, moved on. When briefs were filed in this case, we were told that Yeo had graduated from UT–Austin, received a Rhodes Scholarship, and ended her college swimming career. But none of the parties argues that the case has become moot, because the injunction prevents the NCAA from imposing retroactive sanctions under its "Restitution Rule".[12] We agree that the case is not moot.[13]

■ We first consider whether Yeo has an interest protected by due course of law under article I, section 19 of the Texas Constitution. In so doing, we look as usual to cases construing the federal constitutional guarantee of due process as persuasive authority.[14] The parties have not

8. *In re NCAA*, No. 03–02–00143–CV (Tex. App.-Austin Mar. 22, 2002) (orig.proceeding).

9. *University of Texas v. Yeo*, No. 03–02–00144–CV (Tex.App.-Austin Mar. 22, 2002, no pet.).

10. 114 S.W.3d 584 (Tex.App.-Austin 2003).

11. 48 Tex. Sup.Ct. J. 50 (Oct. 15.2004).

12. *See NCAA v. Jones*, 1 S.W.3d 83, 84, 87–88 (Tex.1999) (holding that an appeal of a temporary injunction against the NCAA, prohibiting enforcement of NCAA rules that would have cost a football player his eligibility for one season, was not moot after the season ended because "NCAA Operating Bylaw 19.8 (the 'Restitution Rule') ... authorizes the NCAA to impose retroactive sanctions if an ineligible student-athlete competes under an injunction that is later voluntarily vacated, stayed or reversed, or found by the courts to have been improperly granted").

13. *Id.*

14. *University of Texas Med. Sch. v. Than*, 901 S.W.2d 926, 929 (Tex.1995) ("While the Texas Constitution is textually different in that it refers to 'due course' rather than 'due process,' we regard these terms as without meaningful distinction. *Mellinger v. City of Houston*, 68 Tex. 37, 3 S.W. 249, 252–53 (1887). As a result, in matters of procedural due process, we have traditionally followed contemporary federal due process interpretations of procedural due process issues. *Mellinger*, 3 S.W. at 252–53; *see also Spring Branch Indep. Sch. Dist. v. Stamos*, 695 S.W.2d 556, 560–61 (Tex.1985); *Tarrant County v. Ashmore*, 635 S.W.2d 417, 422–23 (Tex.), *cert. denied*, 459 U.S. 1038, 103 S.Ct. 452, 74 L.Ed.2d 606 (1982); *House of Tobacco, Inc. v.*

identified any difference between the state and federal guarantees material to the issues in this case.

Yeo does not challenge our holding in *Stamos* that a student has no interest in participating in extracurricular activities that is protected by the Texas Constitution's guarantee of due course of law.[15] Nor does she dispute that under NCAA rules, she was ineligible to participate in the 2002 NCAA women's swimming and diving championship. Yeo argues that she was entitled to notice and a meaningful hearing before NCAA rules were applied to her because of her unique reputation and earning potential. Had she been disqualified from competing in the championship meet, she contends, people would have suspected that it was for her own misconduct and not for UT–Austin's mistakes in attempting to comply with NCAA rules. Yeo acknowledges that the United States Supreme Court has held that reputation alone is not a protected liberty or property interest.[16] But it is the degree of her interests, Yeo contends, and not merely their character, that bring them within constitutional protection. A student-athlete with a lesser reputation or less certain of her earning potential, she concedes, would not have the same rights. The court of appeals agreed:

> *Calvert,* 394 S.W.2d 654, 657–58 (Tex.1965); *Glen Oaks Util. v. City of Houston,* 161 Tex. 417, 340 S.W.2d 783, 784 (1960). Although not bound by federal due process jurisprudence in this case, we consider federal interpretations of procedural due process to be persuasive authority in applying our due course of law guarantee.").

**15.** *Spring Branch I.S.D. v. Stamos,* 695 S.W.2d 556, 561 (Tex.1985).

**16.** *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) ("The words 'liberty' and 'property' as used in the Fourteenth Amendment do not in terms single out reputation as a candidate for special protection over and above other interests that may

In connection with the permanent injunction, the trial court made several material findings of fact that are essentially unchallenged: (1) Yeo had already established a world-class reputation and her "good name, outstanding reputation, high standing in her community, her unblemished integrity and honor are particularly important in the Republic of Singapore and in light of her cultural background"; (2) if NCAA rules did not prohibit athletes from accepting professional compensation while competing in NCAA sanctioned events, Yeo "would be immediately eligible to capitalize on her public persona by entering into lucrative endorsement and marketing opportunities as well as being eligible for prize winnings due to her performance as a member of Singapore's national team"; and (3) "UT–Austin represented to [Yeo] at the time she transferred from [Cal–Berkeley] to become a student-athlete at UT–Austin that UT–Austin would not jeopardize or compromise [Yeo's] eligibility to compete on behalf of UT–Austin in NCAA athletic competition."

These findings of fact support Yeo's theory that her athletic reputation, which was established *even before* she began attending Cal–Berkeley and competing under NCAA regulations, consti-

be protected by state law. While we have in a number of our prior cases pointed out the frequently drastic effect of the 'stigma' which may result from defamation by the government in a variety of contexts, this line of cases does not establish the proposition that reputation alone, apart from some more tangible interests such as employment, is either 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause. ... While not uniform in their treatment of the subject, we think that the weight of our decisions establishes no constitutional doctrine converting every defamation by a public official into a deprivation of liberty within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.") (footnote omitted).

tutes a protected interest for purposes of due course of law. Yeo had competed in two Olympic games before attending college and had been named sportswoman of the year and Olympic flag-bearer for her native country, Singapore. At both the temporary restraining order and permanent injunction hearings, Yeo represented that it was this continuing interest in her athletic and professional reputation that UT–Austin had damaged by its actions.

\* \* \*

Here, Yeo presented testimony from multiple witnesses indicating that she had established a reputation as a world-class athlete in her home country of Singapore *separate and apart from her intercollegiate swimming career.* As a result, much of her reputation had been built outside of the United States and the structure of NCAA intercollegiate athletics. We cannot say that the trial court erred in holding that Yeo had a protected interest under these facts.

UT–Austin, joined by various *amici curiae,* contends that an affirmance in this case will create a protected interest in every intercollegiate student-athlete to participate in athletic events. We reject this argument and note that we reach this decision because of the unique fact pattern with which we are presented. Based upon the largely undisputed

findings of fact, Yeo had already established a protected interest in her reputation as an athlete long before she came to this country to swim competitively as a student-athlete under NCAA rules. Our holding that Yeo, under these facts, has a protected interest should not be read as extending that same protection to every other intercollegiate athlete. The determination of whether a student-athlete has a protected interest is necessarily fact-specific, depending on that athlete's specific situation and reputation. Each such case must be decided on its own merits, in light of the financial realities of contemporary athletic competition. We hold that Yeo's established liberty interest in her reputation as an athlete is entitled to due course of law protection and we affirm the trial court's decision in that regard.[17]

■ We reject Yeo's argument and the court of appeals' holding. The United States Supreme Court has stated, and we agree, that whether an interest is protected by due process depends not on its *weight* but on its *nature*.[18] Yeo does not take issue with this principle but argues in effect that the weight of an interest can determine its nature. A stellar reputation like hers, Yeo contends and the court of appeals concluded, is categorically different from a more modest reputation. We disagree. The loss of either may be, to its owner, substantial. The court of appeals

---

**17.** 114 S.W.3d at 596–598.

**18.** *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 570–571, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) ("But, to determine whether due process requirements apply in the first place, we must look not to the 'weight' but to the nature of the interest at stake. We must look to see if the interest is within the Fourteenth Amendment's protection of liberty and property.")(citation omitted); *Goss v. Lopez,* 419 U.S. 565, 575–576, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) ("[I]n determining 'whether due process require-

ments apply in the first place, we must look not to the "weight" but to the nature of the interest at stake.' [*Id.* at 570–571, 95 S.Ct. 729.] ... The Court's view has been that as long as a property deprivation is not *de minimis,* its gravity is irrelevant to the question whether account must be taken of the Due Process Clause. *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 342, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) (Harlan, J., concurring); *Boddie v. Connecticut,* 401 U.S. 371, 378–379, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); [*Roth,* 408 U.S. at 570 n. 8, 92 S.Ct. 2701].").

held that whether a reputation is constitutionally protected must be decided case by case, but it did not suggest a measure for distinguishing one case from another, and neither does Yeo. We see none, which convinces us that the *nature* of one's interest in a good reputation is the same no matter how good the reputation is.

Yeo's claimed interest in future financial opportunities is too speculative for due process protection. There must be an actual legal entitlement.[19] While student-athletes remain amateurs, their future financial opportunities remain expectations.[20]

Yeo argues that her reputation and future financial interests are entitled to constitutional protection under our decision in *University of Texas Medical School v. Than*.[21] There we held that a medical student charged with academic dishonesty had a protected liberty interest in a graduate education.[22] But since *Than* we have refused to accord a student's interest in athletics the same protection.[23] We decline to equate an interest in intercollegiate athletics with an interest in graduate education.

Accordingly, we hold that Yeo has asserted no interests protected by article I, section 19 of the Texas Constitution. The case must therefore be dismissed. While we need not reach the NCAA's arguments that it should have been permitted to intervene, we expressly disapprove the court of appeals' conclusions that the NCAA's interests were not sufficiently implicated to warrant intervention, and that intervention would have unduly complicated the case.

We have twice reminded the lower courts that "judicial intervention in [student athletic disputes] often does more harm than good."[24] As the Fifth Circuit has said, judges are not "super referees".[25] Along the same vein, the United States Supreme Court has observed: "Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values."[26] We reiterate this counsel to the trial courts and courts of appeals.

The judgment of the court of appeals is reversed, and judgment is rendered that Yeo take nothing.

Justice WILLETT did not participate in the decision.

**19.** *Roth*, 408 U.S. at 577, 92 S.Ct. 2701 ("To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.").

**20.** *See also, e.g., Hall v. NCAA*, 985 F.Supp. 782, 799–800 (N.D.Ill.1997); *Hawkins v. NCAA*, 652 F.Supp. 602, 609–612 (C.D.Ill. 1987) (explaining the speculative nature of such claims due to the numerous variables which may arise and affect an athlete's claim).

**21.** 901 S.W.2d 926 (Tex.1995).

**22.** *Id.* at 929, 934.

**23.** *In re University Interscholastic League*, 20 S.W.3d 690, 692 (Tex.2000) (holding that high school students did not have a constitutionally protected interest in participating in a state baseball tournament).

**24.** *Id.* at 692; *Eanes Indep. Sch. Dist. v. Logue*, 712 S.W.2d 741, 742 (Tex.1986).

**25.** *Hardy v. University Interscholastic League*, 759 F.2d 1233, 1235 (5th Cir.1985).

**26.** *Epperson v. Arkansas*, 393 U.S. 97, 104, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968).