

NUMBER 13-06-550-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI ‑ EDINBURG

**ROGER SEFZIK,**                                                            **Appellant,**

**v.**

**TEXAS DEPARTMENT OF
TRANSPORTATION,**                                                    **Appellee.**

**On appeal from the 53rd District Court of Travis County, Texas.**

# O P I N I O N

**Before Chief Justice Valdez and Justices Benavides and Vela
Opinion by Justice Benavides**

Appellant, Roger Sefzik, sued the appellee, the Texas Department of Transportation (TxDot), seeking a declaration that the Texas Administrative Procedure Act's provisions governing "contested cases" apply to TxDot's denial of an application for a permit to erect an outdoor-advertising sign. Sefzik also sought damages for constitutional due process

violations. TxDot filed a plea to the jurisdiction, asserting that sovereign immunity barred Sefzik's claims. The trial court granted TxDot's plea to the jurisdiction, and Sefzik now appeals. We affirm, in part, and reverse and remand, in part.

## I. BACKGROUND

On March 18, 2005, Sefzik filed an application with TxDot for a permit to erect an outdoor-advertising sign at a designated location on the north side of Interstate 30 in Greenville, Texas. Sefzik sought to advertise on behalf of two businesses at the specific location: T-Bar Fence, Inc. and Gym's Star Gymnastics. As part of the application process, Sefzik was required to demonstrate that the two businesses had been operating for at least 90 days (the "90-day waiting period").[1] TxDot received Sefzik's application at its Paris, Texas office on March 21, 2005.

Apparently, Gym's Star Gymnastics had not been operating for the requisite 90 days at the time TxDot received Sefzik's application. Rather, the 90-day waiting period did not end until April 2, 2005. TxDot did not immediately notify Sefzik of the defect in his application. On April 4, 2005, Daum Advertising applied for a permit to erect an advertising sign at the same location on behalf of the same businesses.

On June 15, 2005, TxDot denied Sefzik's application for a permit. In its denial letter, TxDot informed Sefzik that his application to advertise for Gym Star Gymnastics did not satisfy the 90-day waiting period at the time that TxDot received his application. Additionally, TxDot informed Sefzik that Daum Advertising's permit had been received on April 4, 2005, which was 92 days after Gym's Star Gymnastics opened for business. It told

---

[1] 43 TEX. ADMIN. CODE §§ 21.142(2)(K), 21.150(b)(4).

Sefzik that because Daum Advertising's application satisfied the 90-day waiting period, Daum Advertising was awarded the permit.

On June 20, 2005, Sefzik resubmitted his permit application,[2] and on June 29, 2005, he appealed the previous denial of his application.[3] Sefzik filed his appeal with Michael Behrens, TxDot's Executive Director. He argued that his application was the only one on file on April 2, 2005 when the 90-day waiting period expired. Sefzik argued that TxDot should have notified him of the deficiency in his permit application so that he could resubmit his application. He requested an oral, contested-case hearing, which he asserted was required under Texas Government Code section 2001.051.[4]

On October 7, 2005, Behrens denied Sefzik's appeal without holding a hearing. Behrens opined that TxDot acted reasonably in denying Sefzik's permit application because the initial application did not meet the 90-day waiting period. Behrens cited to the administrative code, which states that applications are considered on a first-come, first-serve basis.[5] Sefzik filed a motion for rehearing,[6] arguing that TxDot failed to comply with

---

[2] The Texas Administrative Code appears to contemplate that if a permit application is filed with errors, TxDot will notify the applicant and allow him or her to correct any deficiencies and resubmit the application. *Id.* § 21.150(c).

[3] *Id.* § 21.162(a) ("An applicant may file a petition with the executive director to appeal a denied permit.").

[4] "In a contested case, each party is entitled to an opportunity: (1) for hearing after reasonable notice of not less than 10 days; and (2) to respond and to present evidence and argument on each issue involved in the case." TEX. GOV'T CODE ANN. § 2001.051 (Vernon 2000).

[5] 43 TEX. ADMIN. CODE 21.150(c) ("Permits will be considered on a first-come, first-serve basis. If an application is returned because of errors or incomplete information, other applications received for the same or conflicting sites between the time a denied application is returned to the applicant and the time it is resubmitted, will be considered before the resubmitted application. A second application for a conflicting site may be held until a decision is made on the first application.").

[6] TEX. GOV'T CODE ANN. § 2001.146 (Vernon 2000).

3

the Administrative Procedure Act ("APA")'s[7] contested case procedures by refusing to provide him with a contested-case hearing under government code section 2001.051. That motion was overruled by operation of law on November 21, 2005.[8]

Sefzik then filed the underlying lawsuit in Travis County District Court. Sefzik alleged jurisdiction pursuant to Texas Government Code section 2001.171, which provides for appeals to the Travis County District Courts from administrative decisions in contested cases.[9] Sefzik alleged claims for declaratory relief under the Uniform Declaratory Judgments Act ("UDJA")[10] and the APA's declaratory judgment provision.[11] Sefzik sought a declaration that the APA's contested-case procedures apply to TxDot's denial of his permit application and that, therefore, he was entitled to an oral hearing on appeal of TxDot's denial of his permit application. Sefzik also alleged that by denying him a contested-case proceeding, TxDot violated his due process rights under the United States and Texas Constitutions.[12] Finally, he sought attorney's fees under the UDJA.[13]

TxDot filed a plea to the jurisdiction and a general denial, asserting that Sefzik's

---

[7] *Id.* §§ 2001.001-2001.902 (Vernon 2000 & Supp. 2007).

[8] *Id.* § 2001.146(c).

[9] *Id.* § 2001.171 (Vernon 2000) ("A person who has exhausted all administrative remedies available within a State agency and who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter."). On appeal, Sefzik does not assert this provision as a ground for jurisdiction.

[10] TEX. CIV. PRAC. & REM. CODE §§ 37.001-37.011 (Vernon 1997 & Supp. 2007).

[11] TEX. GOV'T CODE ANN. § 2001.038 (Vernon 2000). Section 2001.038(a) provides: "The validity or applicability of a rule, including an emergency rule adopted under Section 2001.034, may be determined in an action for declaratory judgment if it is alleged that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff." *Id.*

[12] U.S. CONST. amends. V, XIV; TEX. CONST. art. I, § 19.

[13] TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (Vernon 1997).

4

claims were barred by sovereign immunity. It asserted that Sefzik was not entitled to a contested-case proceeding; therefore, he was not entitled to appeal under Texas Government Code section 2001.171. TxDot further argued that Sefzik was required to demonstrate a waiver of sovereign immunity for his claims for declaratory relief and for constitutional violations. It argued that Sefzik did not have a property interest in the permit but, rather, only had an expectation of a permit. TxDot reasoned that because Sefzik did not have a property interest, he could not establish that the APA's declaratory relief provision waived sovereign immunity. For the same reason, TxDot argued that sovereign immunity barred his constitutional claims. Furthermore, TxDot argued that the UDJA is merely a procedural device for deciding cases already within a trial court's jurisdiction. Therefore, the UDJA claim was also barred by sovereign immunity.

Sefzik argued in response that sovereign immunity is not implicated by actions for declaratory relief or for violations of constitutional rights; therefore, he was not required to establish a waiver of immunity. The trial court agreed with TxDot and granted its plea to the jurisdiction, and this appeal ensued.[14]

## II. STANDARD OF REVIEW

We review a trial court's ruling on subject-matter jurisdiction *de novo*. *Tex. Natural Resource Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). When reviewing a trial court's order on a plea to the jurisdiction, a court of appeals should consider only the "pleadings and evidence pertinent to the jurisdictional question." *Jenkins v. Entergy Corp.*, 187 S.W.3d 785, 795 (Tex. App.–Corpus Christi 2006, pet. denied) (citing *County of*

---

[14] The case was transferred to the Thirteenth Court of Appeals pursuant to a docket equalization order issued by the Supreme Court of Texas. TEX. GOV'T CODE ANN. §73.001 (Vernon 1998).

*Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002)).

"A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Although the claims form the context of the jurisdictional inquiry, the plea should be decided "without delving into the merits of the case." *Id.* In some circumstances, a court will be unable to determine the jurisdictional question without some development of the evidence in the case; in those circumstances, the trial court has discretion to refuse to decide the jurisdictional question until after the case has progressed past the preliminary hearing stages. *Id*. But a party should not be required to put on their entire case in order to establish that they are entitled to be in court in the first place. *Id.* ("The purpose of a dilatory plea is not to force the plaintiffs to preview their case on the merits but to establish a reason why the merits of the plaintiffs' claims should never be reached.").

### III. SOVEREIGN IMMUNITY AND ACTIONS FOR DECLARATORY RELIEF

In this appeal, we must examine the effect of sovereign immunity on a claim for declaratory relief. The principal disagreement between the parties involves the logical construct of the sovereign immunity doctrine. TxDot argues that sovereign immunity, as a general rule, bars claims for declaratory relief and that a plaintiff must therefore establish a waiver of sovereign immunity to proceed with a claim for declaratory relief. We believe, however, that TxDot's analysis ignores the theoretical underpinnings of the doctrine of sovereign immunity and the substantial precedent holding that suits for declaratory relief are not suits against the State, and it requires a plaintiff to establish his or her right to

6

declaratory relief in order to establish jurisdiction. Accordingly, we refuse to require Sefzik to establish that he is entitled to declaratory relief before the trial court can even consider his request for that relief. Rather, we hold, as many other courts have held, that a claim for declaratory relief generally does not implicate the doctrine of sovereign immunity in the first place.

**A.     Suits for declaratory relief do not implicate sovereign immunity**

"Sovereign immunity, unless waived, protects the State from lawsuits *for damages*." *Gen. Serv. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 594 (Tex. 2001) (emphasis added); *see also IT-Davy*, 74 S.W.3d at 853; *Hawkins v. El Paso First Health Plans, Inc.*, 214 S.W.3d 709, 716-18 (Tex. App.–Austin 2007, pet. filed) (holding that suit for declaratory relief was not a suit against the State because it did not seek to impose liability or seek money damages). The doctrine is based on the premise that the legislature's policy-making function deserves protection. *IT-Davy*, 74 S.W.3d at 854. As the Texas Supreme Court has explained,

> [s]ubjecting the government to liability may hamper governmental functions by shifting tax resources away from their intended purposes toward defending lawsuits and paying judgments. Accordingly, the Legislature is better suited than the courts to weigh the conflicting public policies associated with waiving immunity and exposing the government to increased liability, the burden of which the general public must ultimately bear.

*Id.* (citations omitted).

For example, sovereign immunity bars a claim for damages arising out of a breach of contract unless a waiver of sovereign immunity can be established or consent is obtained from the legislature. *Id.* This ensures that current policymakers are not bound by their predecessors' long-term contracts and can respond to changing conditions in the

7

public's best interest. *Id.*

Certain types of actions, however, do not implicate these concerns and, therefore, do not implicate the sovereign immunity doctrine. *Nueces County v. Ferguson*, 97 S.W.3d 205, 217 (Tex. App.–Corpus Christi 2002, no pet.). For example, Texas courts have consistently distinguished suits against the State for money damages from suits for declaratory relief—the latter does not implicate the sovereign immunity doctrine. *See IT-Davy*, 74 S.W.3d at 855; *Hawkins*, 214 S.W.3d at 716; *City of Dallas v. Blanton*, 200 S.W.3d 266, 279 (Tex. App.–Dallas 2006, no pet.); *Ferguson*, 97 S.W.3d at 218. "[N]o consent is required when suit is filed seeking only a declaration or enforcement of rights." *Ferguson*, 97 S.W.3d at 217.[15] In fact, just recently, this Court specifically held as much. *See Powell v. Tex. Dep't of Criminal Justice*, No. 13-06-192-CV, 2008 WL 330722, at *6 (Tex. App.–Corpus Christi Feb. 7, 2008, pet. filed).

The reason for this distinction is that "suits to compel state officers to act within their official capacity do not attempt to subject the State to liability." *IT-Davy*, 74 S.W.3d at 855; *Hawkins*, 214 S.W.3d at 716-18; *Blanton*, 200 S.W.3d at 279 ("A party generally can maintain a suit to determine its rights without legislative permission because such suits are not considered 'suits against the State' for purposes of sovereign immunity."). In other words, suits for declaratory relief do not hamper current policymakers' ability to perform their job in the public interest by binding them to outdated or expired policies. If a statute sought to be construed through a declaratory judgment is outdated, and thus a declaration

---

[15] This is not to say that a party can escape the doctrine of sovereign immunity by artfully pleading a claim for damages as an action for declaratory relief. *Tex. Natural Resource Comm'n v. IT-Davy*, 74 S.W.3d 849, 855-56 (Tex. 2002). For example, declaratory judgment actions against State officials seeking to declare a contract's validity, enforce a contract, or impose contractual liabilities implicate the doctrine of sovereign immunity because they seek to impose liability on the State. *Id.*

of rights under that statute causes problems for the general public, it is the policymakers' job to change the statute, not to ignore it or violate it with impunity.

On more than one occasion, this Court has rejected the idea that the State is immune from declaratory judgment actions seeking to determine a party's rights under a statute. *See Ferguson*, 97 S.W.3d at 218; *Dewhurst v. Gulf Marine Inst. of Tech.*, 55 S.W.3d 91, 97 (Tex. App.–Corpus Christi 2001, pet. denied) ("[W]e distinguish suits to determine a party's rights against the State from suits seeking damages. A party can maintain a suit to determine its rights without legislative permission."); *see also Nueces County v. Hoff*, 105 S.W.3d 208, 211 (Tex. App.–Corpus Christi 2003) (noting that sovereign immunity is not implicated when the suit "does not seek to impose liability on the State, seek money damages against the State, or seek to control state action, as in a declaratory judgment suit"), *rev'd on other grounds*, 153 S.W.3d 45 (Tex. 2004). It is, therefore, well established that when a private plaintiff merely seeks a declaration of his or her rights under a statute, such an action is not subject to a sovereign immunity defense, and a waiver or consent to suit is unnecessary. *Hawkins*, 214 S.W.3d at 716-17; *Blanton*, 200 S.W.3d at 279; *Ferguson*, 97 S.W.3d at 217.

**B.    By characterizing the APA's declaratory relief provision as a "waiver" of immunity, TxDot asks this Court to improperly reach the merits of Sefzik's claims**

TxDot argues that because Sefzik has not demonstrated compliance with the requirements of the APA's declaratory relief provisions, he has not demonstrated a waiver of immunity. The dissent extends this reasoning to TxDot's UDJA claim, asserting that Sefzik has to demonstrate he is entitled to declaratory relief in order to establish

9

jurisdiction. TxDot's and the dissent's view of sovereign immunity would skew the Court's jurisdictional analysis because it would require the Court to decide the merits of Sefzik's declaratory judgment action.

When a statutory waiver of immunity is involved, it is axiomatic that the plaintiff's failure to plead the statutory elements means that sovereign immunity bars the suit. For example, the Texas Tort Claims Act provides a waiver of sovereign immunity in limited circumstances. *Tex. Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001). If a plaintiff suing under the Texas Tort Claims Act does not satisfy the specific requirements of the statute, sovereign immunity is not waived. *Id.* Because the Tort Claims Act also provides the cause of action for recovery against the State, a plaintiff suing under the Tort Claims Act must also satisfy the Tort Claims Act's requirements in order to recover. Such is not the case here, where sovereign immunity is not *implicated.*

By characterizing the APA's declaratory relief provision as a waiver of immunity, TxDot sets up additional hurdles for a plaintiff to cross before ever reaching the merits of his or her claim. For example, TxDot argues that the legislature has imposed strict limits on the scope of a trial court's ability to review agency decisions, and for that reason, a party seeking a declaratory judgment under Texas Government Code section 2001.038 is limited to challenging a rule as invalid or inapplicable. TEX. GOV'T CODE ANN. § 2001.038 (Vernon 2000). TxDot argues that Sefzik merely challenges whether TxDot correctly applied a rule and, in turn, whether TxDot's actions comply with the APA's provisions governing its operation. It argues that under these circumstances, Sefzik is not entitled to a declaratory judgment under section 2001.038. Additionally, TxDot argues that Sefzik does not have a legal right or privilege within the meaning of section 2001.038. *Id.* ("The

10

validity or applicability of a rule, including an emergency rule adopted under Section 2001.034, may be determined in an action for declaratory judgment if it is alleged that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a *legal right or privilege* of the plaintiff.") (emphasis added). Finally, TxDot argues that permit denial appeals are not contested cases under the APA. For all these reasons, TxDot asserts that the trial court lacks jurisdiction. The dissent goes a step further and applies this logic to the UDJA claim: it asserts that because Sefzik cannot establish that his rights, status, or legal relations have been affected, there is no jurisdiction.

These arguments go to the merits of Sefzik's claims for declaratory relief, not to jurisdiction. It may be that Sefzik's claims for declaratory relief are not contemplated by the UDJA or the APA. But that is for the trial court to decide on the merits. By characterizing the APA as a waiver of sovereign immunity, TxDot asks this Court to delve into the merits of Sefzik's claim, which is improper at this stage of the proceedings. *Bland Indep. Sch. Dist.*, 34 S.W.3d at 554.

## C.    Exercising jurisdiction does not violate separation of powers

TxDot further argues that by exercising jurisdiction over a UDJA claim based on the interpretation of a constitutional or statutory provision, the trial court would violate separation of powers concerns. Specifically, TxDot argues that "if the courts could review any and all statutes and constitutional provisions without reliance on a separate basis of jurisdiction, the courts would in essence exercise unmitigated control over the other branches of government." Br. of Appellee at 9, *Sefzik v. Tex. Dep't of Transp.*, No. 13-06-550-CV (Tex. App.–Corpus Christi Feb. 12, 2007). We do not perceive any violation of the

11

separation of powers doctrine by our holding that a suit for declaratory relief does not invoke the doctrine of sovereign immunity. TxDot fails to recognize that sovereign immunity is a common-law doctrine, and it is the courts' province to define the scope of that doctrine and whether it exists in the first place. *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 375 (Tex. 2006).

Moreover, under TxDot's analysis, a suit to test the construction of the statute that applies to an administrative agency could not be entertained. The net effect of such an analysis is that administrative agencies can ignore the APA with impunity, leaving a party entitled to procedures under the APA without any method of enforcing those procedures. In short, an agency can deny that the APA applies and claim sovereign immunity from an action seeking to test that determination. Because TxDot's analysis makes the APA a meaningless exercise of legislative power, we decline to adopt it.

For all the foregoing reasons, we focus only on the type of relief Sefzik seeks—declaratory relief—and hold that a suit seeking to determine his rights under the UDJA or the APA does not invoke the doctrine of sovereign immunity. Accordingly, the trial court erred in granting TxDot's plea to the jurisdiction as to his claims for declaratory relief.

### IV. Sovereign Immunity and Sefzik's Constitutional Claims

Sefzik brought claims against TxDot for violations of his rights under the Fifth and Fourteenth Amendments to the United States Constitution and under Article I, section 19 of the Texas Constitution. U.S. CONST. amends. V, XIV; TEX. CONST. art. I, § 19 ("No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disenfranchised, except by the due course of the law of the land."). He alleged that TxDot failed to afford him due process and due course of law by refusing to

12

grant him a hearing in his appeal of TxDot's denial of his permit application. TxDot argues that Sefzik failed to allege the existence of a right protected by these constitutional provisions; therefore, sovereign immunity bars Sefzik's claim.[16] Sefzik argues that it is not necessary to demonstrate a waiver of immunity when a party seeks relief for constitutional violations. We agree with TxDot.

Sefzik's claim for constitutional violations sought damages from TxDot. TxDot's argument against this claim was raised in a jurisdictional plea based solely on sovereign immunity—TxDot did not argue, and we do not decide, whether any cause of action for damages actually exists for the alleged constitutional violations. *Perry v. Texas A & I Univ.*, 737 S.W.2d 106, 108 (Tex. App.–Corpus Christi 1987, writ ref'd n.r.e.) ("[T]he issues before us are restricted to the question of the application of the principles of governmental immunity to these defendants and not whether any cause of action for damages arises from the allegations of constitutional violations.").

As we have previously stated, "[i]n addressing the issue of immunity from suit, it is critical to recognize that the action is one for damages and not one seeking injunctive relief." *Id.* As such, Sefzik's claim for damages for constitutional violations is a "suit against the State" that invokes the doctrine of sovereign immunity. *Id.* This Court's prior holdings treat the constitutional provisions as waivers of immunity and require that the plaintiff plead a valid cause of action thereunder in order to establish immunity. *Id.* at 109; *see also State Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 581 (Tex. 2001) (holding that

---

[16] The Texas Supreme Court has held that the Texas Constitution's due course of law provision, Article I section 19, protects essentially the same interests as the due process provisions in the United States Constitution. *NCAA v. Yeo*, 171 S.W.3d 863, 867-68 & n. 14 (Tex. 2005).

13

suit against department of public safety under 42 U.S.C. § 1983 was suit against the State, and plaintiff's failure to properly plead claim under that provision meant that claim was barred by sovereign immunity); *Univ. of Tex. Sys. v. Courtney*, 946 S.W.2d 464, 469 (Tex. App.–Fort Worth 1997, writ denied) (op. on reh'g) (holding that university had sovereign immunity from suit for federal due process claims because plaintiff did not properly plead a 42 U.S.C. § 1983 claim).

For example, in *Perry v. Texas A & I University*, a counselor at Texas A & I University sued the university alleging the deprivation of property in violation of the Fourteenth Amendment to the United States Constitution and Article I, section 19 of the Texas Constitution. 737 S.W.2d at 107. The counselor sought damages from the University. *Id.* We referenced the general rule that a suit that seeks to impose liability on the State invokes the doctrine of sovereign immunity. *Id.* at 109. The counselor argued that "when a violation of constitutional or property rights is alleged, the courts have a right to review the acts of legislative and administrative bodies." *Id.* We rejected this argument, noting that the counselor was not seeking review of administrative or legislative acts but, rather, was seeking monetary damages. *Id.* We then held that the counselor had not alleged that she had a vested property right that was denied. *Id.* We held that "because there was no pleading by the plaintiff to take her out of the general rule that the courts of the State of Texas have no jurisdiction to impose liability on the State without legislative consent, we sustain the judgment [dismissing her claims for lack of jurisdiction]." *Id.*[17]

---

[17] In dicta in *Nueces County v. Ferguson*, we stated that "[a]lthough a request for money damages does not affect the jurisdiction of the trial court over a claim of a violation of article I, section 19, even when the State is a defendant, there is no right to a money judgment for such a violation." 97 S.W.3d 205, 221-22 (Tex. App.–Corpus Christi 2002, no pet.). In a footnote, we stated that "[a] suit brought for a violation of article I, section 19 of the constitution that seeks money damages would not be barred by sovereign immunity as the

14

The *Perry* decision correctly held that constitutional provisions operate as a waiver of immunity that is coextensive with the cause of action provided, if any. *Id.; see also Tex. Parks & Wildlife Dep't v. Callaway*, 971 S.W.2d 145, 149 (Tex. App.–Austin 1998, no writ) ("When the state or its agency takes, damages, or destroys public property for public use, 'the Constitution itself is the authorization for compensation for the destruction of property and is a waiver of governmental immunity . . .' Thus, if Callaway alleged a valid claim for inverse condemnation . . ., sovereign immunity does not bar the claim."). In other words, to demonstrate a waiver of immunity *and* to recover on such a claim, Sefzik must allege facts that, if proven, would satisfy the elements of the claim. Here, as we explain next, Sefzik has not alleged a recognized property right that is deserving of due process protections. Accordingly, he has not demonstrated a waiver of immunity for his claim for due process violations. *Perry*, 737 S.W.2d at 109*; cf. Callaway*, 971 S.W.2d at 151 ("Callaway has a property interest that is entitled to due-process protection. . . . The trial

_____

constitution itself provides a waiver of sovereign immunity for violations of this provision." *Id.* at 222 n. 23. However, we noted that nowhere in Ferguson's pleading had she alleged a violation of Article I, section 19. *Id.* at 221. These statements were dicta. In fact, two of the cases cited therein demonstrate that a waiver of immunity is, in fact, necessary when a plaintiff seeks damages for alleged violations of Article I, section 19. *See Univ. of Tex. Sys. v. Courtney*, 946 S.W.2d 464, 469 (Tex. App.–Fort Worth 1997, writ denied) (op. on reh'g) (court lacked jurisdiction over plaintiff's claim for damages under Article I, section 19); *Alcorn v. Vaksman*, 877 S.W.2d 390, 404 (Tex. App.–Houston [1st Dist.] 1994, writ denied) ("However, consent is not needed when, as here, the breach of contract (or other government action) constitutes a state constitutional violation and the plaintiff seeks a remedy other than money damages. . . . We conclude that consent is required to bring suit for a money judgment that would be paid from the state treasury."). The rest of the cases cited either did not address immunity or are factually distinguishable. *Steele v. City of Houston*, 603 S.W.2d 786, 791 (Tex. 1980) (takings clause of Texas Constitution expressly authorizes award of damages for violation; therefore, the clause provides a waiver of immunity for claims for damages); *Tex. A. & M. Sys. v. Luxemburg*, 9 S.W.3d 410, 425 (Tex. App.–Houston [14th Dist.] 2002, pet. denied) (holding that violation of Article I, section 19 does not give rise to an action for damages without addressing sovereign immunity); *Tex. State Employees' Union/CWA Local 6184 v. Tex. Workforce Comm'n*, 16 S.W.3d 61, 67 (Tex. App.–Austin 2000, no pet.) (holding that plaintiff's claim was not subject to sovereign immunity doctrine because plaintiff sought only equitable relief as opposed to monetary damages). To the extent that *Ferguson* can be read to imply that a suit for damages under Article I, section 19 is not subject to a sovereign immunity defense, we disapprove of that implication.

15

court therefore did not err in denying the Department's plea to the jurisdiction as to Callaway's due-process claim.").

To state a valid due process or due course of law claim, a plaintiff must first allege the existence of a protected right. *NCAA v. Yeo*, 171 S.W.3d 863, 867-68 (Tex. 2005). If the plaintiff has a protected right, the court must determine what amount of process is due. *Univ. of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 930-31 (Tex. 1995). To have a property interest in a governmental benefit, a person must have more than a unilateral expectation of that benefit. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972); *Smith v. Travis County Bail Bond Bd.*, 559 S.W.2d 693, 694 (Tex. Civ. App.–Austin 1977, no writ) (holding plaintiff had no property interest in expired license); *see also Shrieve v. Tex. Parks & Wildlife Dep't*, No. 03-04-00640-CV, 2005 WL 1034086, at *5-6 (Tex. App.–Austin May 5, 2005, no pet.) (mem. op.) (holding that Shrieve's expectation of a permit was not a protected property interest). Rather, the plaintiff must have a legitimate claim of entitlement to the benefit. *Smith*, 559 S.W.2d at 694.

Sefzik's permit application merely sought a governmental benefit to which he was not already entitled. As such, Sefzik merely had an expectation of the governmental benefit—his expectation is not a protected property right. *Smith*, 559 S.W.2d at 694; *Shrieve*, 2005 WL 1034086, at *5-6. This is not a case where a permit has been granted but has later been taken away by the State without cause. *See, e.g.*, *House of Tobacco, Inc. v. Calvert*, 394 S.W.2d 654, 657-58 (Tex. 1965); *Richardson v. Alsup*, 380 S.W.2d 923, 923 (Tex. App.–Eastland 1964, writ ref'd). Accordingly, we hold that Sefzik has failed to demonstrate that sovereign immunity is waived for his due process and due course of

16

law claims. Thus, the trial court did not err in sustaining TxDot's plea to the jurisdiction as to these claims.

## V. CONCLUSION

We hold that the trial court erred in sustaining TxDot's plea to the jurisdiction as to Sefzik's requests for declaratory relief under the Uniform Declaratory Judgments Act and under the Administrative Procedure Act. We reverse and remand those requests for further proceedings. Finding that Sefzik's due process and due course of law claims are barred by sovereign immunity, we affirm the trial court's order sustaining TxDot's plea to the jurisdiction as to these claims.

_____
GINA M. BENAVIDES,
Justice

Dissenting Opinion by
Justice Rose Vela.

Opinion delivered and filed
this the 19th day of June, 2008.

17