

**NUMBER 13-06-332-CV**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

LOUISE ELIZABETH HURST,                                                        Appellant,

v.

TEXAS DEPARTMENT OF ASSISTIVE AND
REHABILITATIVE SERVICES; AND TERRY
MURPHY, IN HIS OFFICIAL CAPACITY AS
COMMISSIONER OF THE TEXAS DEPARTMENT
OF ASSISTIVE AND REHABILITATIVE SERVICES;
AND ALBERT HAWKINS, AS EXECUTIVE
COMMISSIONER OF THE HEALTH AND
HUMAN SERVICES COMMISSION,                                                     Appellees.

---

On appeal from the 201st District Court of Travis County, Texas.

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Benavides
Memorandum Opinion by Justice Benavides**

Appellant, Louise Elizabeth Hurst, appeals from a trial court's order granting a plea

to the jurisdiction filed by appellees, the Texas Department of Assistive and Rehabilitative Services; Terry Murphy, the department's commissioner; and Albert Hawkins, the executive commissioner of the Health and Human Services Commission (collectively "DARS"). Hurst argues that: (1) the trial court erred by applying the 30-day filing deadline found in Texas Government Code section 2001.176 to her claim; (2) the trial court erred by dismissing her claims for declaratory relief; (3) DARS waived sovereign immunity by accepting federal funds pursuant to 29 U.S.C. §§ 701-796 (the "federal Rehabilitation Act") or by adopting title 40, Texas Administrative Code, section 107.413(a)[1]; and (4) DARS's policy of prohibiting benefits for exploratory surgery is contrary to law. *See* 29 U.S.C. §§ 701-796; TEX. GOV'T CODE ANN. § 2001.176 (Vernon 2005); 40 TEX. ADMIN. CODE § 107.413 (2003), *repealed by* 32 Tex. Reg. 4778 (2007). We affirm, in part, and reverse and remand, in part.

## I. Background

In June 2002, Hurst was diagnosed with cervical spine damage. Her doctors informed her that if left untreated, Hurst could die or become paralyzed. She applied for

---

[1] This section provided:

> Any party who disagrees with the findings and decision of an impartial hearing officer under § 104.4(b) of this title (relating to Mediation and Due Process Hearings) have a right to bring a civil action with respect to the matter in dispute. The action may be brought in any State court of competent jurisdiction or in a district court of the United States of competent jurisdiction without regard to the amount in controversy.

40 TEX. ADMIN. CODE § 107.413(a) (2003). This rule was repealed on August 31, 2007. *See* 32 Tex. Reg. 4778 (2007). Contemporaneous with the repeal of section 107.413, DARS proposed rule 101.7045(a), which became effective August 31, 2008 and provides that "[a]ny party who disagrees with the findings and decision of an impartial hearing officer has a right to bring a civil action in any court of competent jurisdiction without regard to the amount in controversy." 40 TEX. ADMIN. CODE § 101.7045 (2008). Because section 107.413 was in effect at the time that Hurst filed her lawsuits in state and federal court, we will cite to the former provision in the administrative code.

2

rehabilitation assistance from DARS.[2]  DARS initially determined that Hurst was eligible for rehabilitative services.  It initiated an evaluation of Hurst's situation and attempted to formulate an individualized plan so that Hurst could return to employment.

DARS referred Hurst to several doctors over the course of the next year, and all the doctors recommended surgical fusion of her vertebrae.  On March 31, 2003, DARS informed Hurst that the proposed surgery was an "exploratory surgery," for which DARS would not pay.  DARS denied Hurst any further medical treatment and refused to provide further services.

Hurst filed an appeal with DARS.  An administrative hearing was held on August 19, 2003.  The hearing officer affirmed DARS's decision by a ruling dated September 23, 2003.  Hurst then filed a motion for reconsideration.  DARS denied the motion on October 24, 2003.

Hurst filed suit in federal court, relying on title 40, Texas Administrative Code, section 107.413.  See 40 TEX. ADMIN. CODE § 107.413(a).  Once in federal court, DARS moved to dismiss based on Texas's sovereign immunity under the Eleventh Amendment to the United States Constitution.  See Hurst v. Tex. Dep't of Assistive & Rehabilitative Servs., 482 F.3d 809, 809 (5th Cir. 2007), cert. denied, 128 S.Ct. 490 (2007).  As part of its motion to dismiss in federal court, DARS asserted that the district court should abstain from exercising jurisdiction because Hurst "has a timely and adequate remedy in state court."  Hurst argued in response that by accepting federal funds under the federal

_____

[2] DARS was formerly known as the Texas Rehabilitation Commission.  Effective March 7, 2004, DARS replaced the Texas Rehabilitation Commission.  TEX. HUMAN RES. CODE ANN. §§ 117.001-.074 (Vernon Supp. 2008).  The actions described in the background section prior to March 7, 2004, were taken by the Texas Rehabilitation Commission, but we will refer to the commission as DARS for ease of reference.

Rehabilitation Act, 29 U.S.C. §§ 701-796, Texas waived its sovereign immunity. The district court held that the Rehabilitation Act did not condition the receipt of federal funds on a waiver of sovereign immunity. *Hurst*, 482 F.3d 809. Accordingly, on September 22, 2005, the federal district court dismissed Hurst's action without prejudice.[3]

On October 25, 2005, Hurst filed the underlying action in Travis County District Court, seeking several different forms of relief. First, she asserted that she was appealing DARS's decision to deny her benefits under Texas Government Code sections 2001.171-.178. *See* TEX. GOV'T CODE ANN. §§ 2001.171-.178 (Vernon 2000). Second, she requested a declaratory judgment under the Uniform Declaratory Judgment Act ("UDJA"), declaring that DARS's policy of prohibiting "exploratory back surgery" is unauthorized and contrary to the federal Rehabilitation Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.001-.011 (Vernon 2008). Third, she requested an injunction ordering DARS to approve and pay for her treatment.

DARS filed a plea to the jurisdiction, arguing that under the doctrine of sovereign immunity, it was immune from suit. First, DARS argued that to invoke the trial court's jurisdiction to review its administrative order, Hurst was required to file suit within 30 days after the order became final. *See* TEX. GOV'T CODE ANN. § 2001.176(a) (Vernon 2000). Because Hurst did not file her state-court action until two years after the administrative decision, DARS argued that the trial court lacked jurisdiction over the case. Second, DARS argued that neither the federal Rehabilitation Act nor DARS's regulations waived

---

[3] The Fifth Circuit later affirmed the federal court's dismissal of Hurst's action, and the United States Supreme Court denied Hurst's petition for writ of certiorari. *Hurst,* 482 F.3d 809, 809 (5th Cir. 2007), *cert. denied,* 128 S.Ct. 490 (2007).

4

sovereign immunity. Finally, DARS argued that the UDJA is merely a procedural tool for claims already within the trial court's jurisdiction; therefore, the UDJA did not confer jurisdiction on the trial court.

In response, Hurst first argued that the trial court should apply a two-year statute of limitations because section 2001.176 of the Texas Government Code conflicted with the federal Rehabilitation Act. Second, she argued that the federal Rehabilitation Act provided an independent basis for the court's jurisdiction and that Texas waived its sovereign immunity by accepting federal funds. Third, Hurst argued that sovereign immunity does not bar her claim for declaratory relief, which was for prospective relief only.

The trial court held a hearing on January 30, 2006, and it granted DARS's plea to the jurisdiction on the same day, dismissing Hurst's suit. Hurst filed a motion for new trial. In her motion, she asserted for the first time that the 30-day limitation in government code section 2001.176 should be tolled. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.064 (Vernon 2008). Hurst's motion was overruled by operation of law, and this appeal ensued.[4]

## II. Standard of Review and Applicable Law

We review a trial court's ruling on subject-matter jurisdiction *de novo. Tex. Natural Resource Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). When reviewing a trial court's order on a plea to the jurisdiction, a court of appeals should consider only the "pleadings and evidence pertinent to the jurisdictional question." *Jenkins v. Entergy Corp.*, 187 S.W.3d 785, 795 (Tex. App.–Corpus Christi 2006, pet. denied) (citing *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002)).

---

[4] The case was transferred to this Court pursuant to a docket equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005).

"A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Although the claims form the context of the jurisdictional inquiry, the plea should be decided "without delving into the merits of the case." *Id.* In some circumstances, a court will be unable to determine the jurisdictional question without some development of the evidence in the case; in those circumstances, the trial court has discretion to refuse to decide the jurisdictional question until after the case has progressed past the preliminary hearing stages. *Id.* But a party should not be required to put on their entire case in order to establish that they are entitled to be in court in the first place. *Id.* ("The purpose of a dilatory plea is not to force the plaintiffs to preview their case on the merits but to establish a reason why the merits of the plaintiffs' claims should never be reached.").

Texas Rule of Appellate Procedure 41.3 was recently added to clarify that because this is a transfer case, we are bound to follow the precedent of the transferor court, which in this case is the Austin Court of Appeals:

> In cases transferred by the Supreme Court from one court of appeals to another, the court of appeals to which the case is transferred must decide the case in accordance with the precedent of the transferor court under principles of stare decisis if the transferee court's decision otherwise would have been inconsistent with the precedent of the transferor court. The court's opinion may state whether the outcome would have been different had the transferee court not been required to decide the case in accordance with the transferor court's precedent.

TEX. R. APP. P. 41.3.

### III.  Analysis

Hurst raises several arguments in favor of jurisdiction.  Hurst argues that (1) the trial

6

court erred by applying the 30-day filing deadline found in Texas Government Code section 2001.176 to her claim for judicial review of DARS's decision; (2) DARS waived sovereign immunity by accepting federal funds pursuant to the Rehabilitation Act, 29 U.S.C. §§ 701-796 or by adopting 40 TEX. ADMIN. CODE § 107.413; and (3) the trial court erred by dismissing her claims for prospective, declaratory relief. *See* 29 U.S.C. §§ 701-796; TEX. GOV'T CODE ANN. § 2001.176; 40 TEX. ADMIN. CODE § 107.413. For the reasons we explain below, we hold that Hurst's administrative appeal is barred by sovereign immunity because she failed to comply with the mandatory, jurisdictional requirements found in section 2001.176.[5] However, we agree with Hurst that the trial court erred by dismissing her claim for prospective, declaratory relief, which does not implicate the doctrine of sovereign immunity.

## A.    Thirty-day Filing Deadline

Hurst asserts that the trial court erroneously applied the 30-day deadline found in Texas Government Code section 2001.176 as a jurisdictional bar to her suit. *See* TEX. GOV'T CODE ANN. § 2001.176. In this regard, she raises three distinct arguments. First, she asserts that the trial court should have applied a two-year statute of limitations because the government code conflicts with the federal Rehabilitation Act. *Compare* 29 U.S.C. §§ 701-796, *with* TEX. GOV'T CODE ANN. § 2001.176. Second, she asserts that section 2001.176 is merely a statute of limitations, not a jurisdictional requirement. *See*

---

[5] Hurst argues that the trial court could have decided the case without reaching the constitutional issue of sovereign immunity by merely dismissing her claim for failure to comply with the 30-day deadline in Texas Government Code section 2001.176. *See* TEX. GOV'T CODE ANN. § 2001.176. However, as DARS points out, Texas Government Code section 2001.176 is a limited waiver of sovereign immunity for challenges to administrative decisions in contested case proceedings. *See Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care*, 145 S.W.3d 170, 198 (Tex. 2004). Thus, the trial court was required to address its jurisdiction before proceeding to the merits of the case.

7

TEX. GOV'T CODE ANN. § 2001.176. Because section 2001.176 is a statute of limitations, she argues that it can be tolled under Texas Civil Practice and Remedies Code section 16.064 and under equitable tolling principles. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.064. Finally, Hurst argues that application of the 30-day filing deadline violates the Due Course of Law guarantee in article 1, section 19 of the Texas Constitution. *See* TEX. CONST. art. 1, § 19. We disagree with her first two arguments, and her third argument was not preserved in the trial court.

### 1. Two-year limitations period

Hurst argues that the filing deadline in government code section 2001.176 must be read in conjunction with the federal Rehabilitation Act, and to the extent of a conflict, the federal Rehabilitation Act must control. Specifically, she argues that federal courts have applied a two-year limitations period to claims under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(i)(2)(A),[6] which is nearly identical to the provision in the federal Rehabilitation Act that provides for review of administrative decisions. *See* 29 U.S.C. § 722(c)(5)(J)(i).[7] She refers this Court to *Scokin v. Texas*, 723 F.2d 432, 438

---

[6] The IDEA provides:

Any party aggrieved by the findings and decision made under subsection (f) or (k) of this section who does not have the right to an appeal under subsection (g) of this section, and any party aggrieved by the findings and decision made under this subsection, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy.

20 U.S.C. § 1415(i)(2)(A).

[7] The federal Rehabilitation Act provides:

Any party aggrieved by a final decision described in subparagraph (I), may bring a civil action for review of such decision. The action may be brought in any State court of competent jurisdiction or in a district court of the United States of competent jurisdiction without regard to the amount in controversy.

8

(5th Cir. 1984) and *Texas Advocates Supporting Kids with Disabilities v. Texas Education Agency*, 112 S.W.3d 234, 236 (Tex. App.–Austin 2003, no pet.). We disagree that these cases require the application of a two-year statute of limitations.

In *Scokin*, the Fifth Circuit was required to determine what statute of limitations to apply to an action filed in federal district court under the Education of All Handicapped Children Act (EAHCA), which was the precursor to the IDEA. 723 F.2d at 435. The EAHCA provided that a party, who was aggrieved by a decision by a state agency administering the EAHCA, could file suit in federal or state court. *Id.* The EAHCA did not provide a limitations period or filing deadline. *Id.* The court, therefore, had to determine what limitations period should apply. *Id.* It reiterated the general rule that federal courts in these situations look to state law to find an analogous limitations period that is consistent with the underlying purposes of the act:

> When a federal statute creates a right but does not specify a period of limitations, federal courts generally determine which state cause of action is most analogous to the federally created cause of action. If the limitations period applicable to the analogous state cause of action is consistent with the underlying policy of the federal act, the court will borrow that limitations period and apply it to the federal cause of action.[8]

*Id.* at 436. In other words, because there is no federal limitations period, the federal court "borrows" a state limitations period.

The Fifth Circuit considered whether the 30-day filing deadline in the Texas

---

29 U.S.C. § 722(c)(5)(J)(i).

[8] Hurst also cites *Burnett v. Grattan*, 468 U.S. 42 (1984). That case also involved a federal court "borrowing" a state law limitations period and applying it to a federal cause of action *pending in federal court. Id.* at 44.

Administrative Procedure Act should apply, and it determined that the 30-day period was inconsistent with the purposes of the EAHCA. *Id.* The court held that the EAHCA's goal of parental involvement in the handicapped child's education would be thwarted by forcing parents to make a decision to appeal within such a short period of time, in part, due to the child's changing educational needs:

> A short limitations period is contrary to the Act's goal of parental involvement. Thirty days is not enough time for parents to determine whether to pursue judicial review of their complaint. A decision to jump from an administrative process to federal court may involve obtaining or changing counsel. Parents may want to conduct further testing of their child to better evaluate the agency's decision. While such testing will probably be conducted before and during the administrative hearings, a child's needs may change during the process, and parents may want an updated evaluation before deciding whether to go to court. In addition, because a child's welfare is an emotional issue, parents may need time to reflect before choosing a course of action.

*Id.* at 437. Hurst argues that the federal Rehabilitation Act has a similar purpose—to protect individuals requiring vocational rehabilitation—that requires a longer filing period.

Hurst, however, provides no explanation for how the Fifth Circuit's precedent applies to this state-court proceeding. The federal Rehabilitation Act does not provide a limitations period. *See Chair King, Inc. v. GTE Mobilnet of Houston, Inc.*, 135 S.W.3d 365, 389 (Tex. App.–Houston [14 Dist.] 2004), *rev'd on other grounds*, 184 S.W.3d 707 (Tex. 2006) ("[I]f Congress has enacted a statute that requires a four-year limitations period for the federal claim asserted in this case, then that federal law would preempt any contrary state-law analysis."). In the absence of a direct conflict with federal law, we must apply state procedural law to Hurst's claims filed in state court, whether her claims are characterized as federal or state law causes of action. *See Exxon Corp. v. Choo*, 881 S.W.2d 301, 306 n.9 (Tex. 2000); *see also Smith & Assocs., LLP v. Advanced Placement Team, Inc.,* 169

10

S.W.3d 816, 822 (Tex. App.–Dallas 2005, pet. denied). The filing deadline in government code section 2001.176 applies to Hurst's claims in state court. *Smith & Assocs., LLP,* 169 S.W.3d at 822.

The Austin Court of Appeals' decision in *Texas Advocates Supporting Kids with Disabilities v. Texas Education Agency* does not compel a different result. *See* 112 S.W.3d at 236. In that case, the Texas Education Agency adopted a regulation that required parties seeking judicial review of an agency determination under the IDEA to file suit within 90 days after the administrative determination. *Id.* at 236. The Austin Court of Appeals held that the agency did not have authority to adopt the 90-day filing deadline, and it applied a two-year statute of limitations to an IDEA claim in state court. *Id.* at 241. The court's ruling was based on the separation of powers doctrine. *Id.* It held that the agency could only act within its delegated authority, and the Texas Legislature had not delegated, expressly or impliedly, the authority to adopt a limitations period applicable to suits for judicial review. *Id.*

In *Texas Advocates*, the court was careful to note that neither the Texas Legislature nor the United States Congress had adopted a limitations period applicable to IDEA claims. *Id.* Hurst's case is different—here, the Texas Legislature has provided a method for judicial review by enacting government code section 2001.176 and has imposed a filing deadline. TEX. GOV'T CODE ANN. § 2001.176. This case does not involve an allegation of an improper exercise of power by an agency. For all the foregoing reasons, we hold that the 30-day filing deadline found in section 2001.176 applies to Hurst's suit for judicial review of DARS's administrative decision.

## 2. Limitations Period or Jurisdictional Bar?

Next, Hurst argues that the filing deadline in section 2001.176 is merely a limitations period that must be raised by an affirmative pleading, not by a plea to the jurisdiction. As such, she reasons that the time period can be tolled. Hurst's argument, however, is inconsistent with the Austin Court of Appeals' binding precedent.

Hurst argues that in *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71 (Tex. 2000), the Texas Supreme Court explained that statutory prerequisites to suit are not jurisdictional. Hurst argues that this rule did not change until the Texas Legislature adopted section section 311.034 of the government code, which became effective on September 1, 2005. *See* TEX. GOV'T CODE ANN. § 311.034 (Vernon 2005).[9] She argues that the statute only applies prospectively, and because DARS's decision to deny benefits occurred before the statute became effective, it does not apply to her case. *See, e.g., Dallas County v. Posey*, 239 S.W.3d 336, 339 (Tex. App.–Dallas 2007, pet. filed).

The problem with Hurst's argument is that after *Dubai,* but before government code section 311.014 became effective, the Austin Court of Appeals specifically held that filing deadlines in administrative appeals constitute a different type of statutory prerequisite that remained jurisdictional in spite of the Texas Supreme Court's decision in *Dubai. Heart*

---

[9] Section 311.034 provides:

> In order to preserve the legislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language. In a statute, the use of "person," as defined by Section 311.005 to include governmental entities, does not indicate legislative intent to waive sovereign immunity unless the context of the statute indicates no other reasonable construction. Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity.

TEX. GOV'T CODE ANN. § 311.034 (Vernon 2005).

*Hosp. IV, L.P. v. King,* 116 S.W.3d 831, 834-37 (Tex. App.–Austin 2003, pet denied); *see also Brown v. Texas Educ. Agency,* No. 03-00-00433-CV, 2002 WL 1377857, at *1-2 (Tex. App.–Austin 2002, pet. denied) (not designated for publication). In *Heart Hospital*, the Austin Court of Appeals considered whether the 14-day filing deadline applicable to judicial appeals from decisions of the Texas Workforce Commission was a jurisdictional requirement. *Heart Hosp.*, 116 S.W.3d at 834. It reasoned that because filing deadlines limit the classes of cases that a district court may consider, the filing deadline is not merely a statutory prerequisite but is a jurisdictional requirement:

> We must begin our analysis by first determining whether compliance with the statutory fourteen-day deadline is jurisdictional. Failure of a party to comply with statutory requirements is no longer an absolute bar to review of an agency determination. Some statutory prerequisites, however, remain jurisdictional. This Court has distinguished "statutory prerequisites" from those matters that are "traditionally and undoubtedly elements of subject-matter jurisdiction." A jurisdictional statutory requirement is one that "defines, enlarges, [or] restricts the class of causes the court may decide or the relief the court may award." A statutory requirement that does none of these may nevertheless affect a plaintiff's right to relief, but it is not jurisdictional. Applying these principles, this Court has held that failure to exhaust all administrative remedies, including the timely filing of a motion for rehearing, is jurisdictional "because the filing of the motion for rehearing defines and restricts the kind of case a district court may hear." Similarly, the statutory fourteen-day deadline also defines and restricts the kind of case that district courts may hear.

*Id.* at 834-35 (citing *Dubai,* 12 S.W.3d at 76) (internal citations omitted).

Thus, even if we accepted Hurst's argument that DARS is seeking to apply government code section 311.034 retroactively to her case, the Austin Court of Appeals would have held that the filing deadline in government code section 2001.176 was a jurisdictional requirement even before that statute took effect. *Id.*; *see also Brown*, 2002 WL 1377857, at *1-2 (not designated for publication) (holding section 2001.176 is a

13

jurisdictional requirement). Accordingly, we must reject Hurst's argument, even though we might have decided the issue differently had we been applying precedent from our own Court.

Our determination that section 2001.176's filing deadline is jurisdictional also precludes Hurst's tolling theories. In *Heart Hospital*, the Austin Court of Appeals held that the tolling provision in Texas Civil Practice and Remedies Code section 16.064 does not apply to special statutory proceedings such as judicial review of agency determinations. *Heart Hosp.*, 116 S.W.3d at 836. Furthermore, it held that because filing deadlines are jurisdictional, equitable tolling theories do not apply. *Id.*

Hurst argues that DARS should be equitably estopped from asserting limitations because it represented to Hurst and to the federal district court that she had a timely and adequate state remedy. While we do not condone the apparent "bait and switch" tactics employed by DARS when it (1) represented that Hurst could file suit in both state or federal court, (2) represented to the federal district court that Hurst still had a state remedy, and (3) then moved to dismiss her state court action based on the filing deadline, we are unable to remedy the situation because the filing deadline was jurisdictional. Accordingly, we must reject Hurst's arguments. *Id.* ("Once King failed to comply with that statutory prerequisite, his cause could not be saved by a tolling provision applicable only to statutes of limitations; the district court simply did not have jurisdiction.").

### 3.    Due Course of Law

Hurst argues that DARS's inconsistent representations to the federal district court and to the trial court below, regarding the availability of a state-court remedy, violate the

14

Due Course of Law guarantee in the Texas Constitution. TEX. CONST. art. 1, § 19. DARS correctly points out that Hurst never raised this argument in the trial court. Accordingly, Hurst waived this argument. TEX. R. APP. P. 33.1; *Ratsavong v. Menevilay*, 176 S.W.3d 661, 671 (Tex. App.–El Paso 2005, pet. denied); *Hernandez v. State Bar of Tex.*, 812 S.W.2d 75, 78 (Tex. App.–Corpus Christi 1991, no writ).

## B. DARS's Acceptance of Federal Funding and Adoption of Regulations

Hurst asserts that the federal Rehabilitation Act provides a separate basis for the trial court's jurisdiction. She asserts that by accepting federal funds under the Rehabilitation Act, the state of Texas waived its sovereign immunity from suit in its own courts. DARS responds that the federal court has already determined this issue in DARS's favor. *See Hurst,* 482 F.3d at 814. Thus, DARS argues that res judicata applies to preclude Hurst from relitigating this issue.

First, we note that the federal district court and the Fifth Circuit have already rejected Hurst's argument, and the Supreme Court denied review. *Id.* Hurst argues that the same sovereign immunity analysis does not apply in state court as in federal court; therefore, we should not hold that Texas retains sovereign immunity based on the federal court's ruling. Hurst offers no support for her contention. In fact, Eleventh Amendment immunity applies to state-court suits for violations of federal law. *See Alden v. Maine*, 527 U.S. 706, 712 (1999); *see also Klebe v. Univ. of Tex. Sys.*, No. 03-05-00527-CV, 2007 WL 2214344, at *5 (Tex. App.–Austin July 31, 2007, no pet.) (mem. op.). Even if we agreed

with Hurst that her argument was not barred by res judicata,[10] the Texas Supreme Court has explained that we are bound to follow federal interpretations of Eleventh Amendment immunity. *See Hoff v. Nueces County*, 153 S.W.3d 45, 49 (Tex. 2004). While the Fifth Circuit's pronouncements are not binding on this Court as a United States Supreme Court decision would be, it is persuasive authority. *Brooks v. Ctr. for Healthcare Servs.*, 981 S.W.2d 279, 286 (Tex. App.–San Antonio 1998, no pet.).

As the Fifth Circuit correctly noted, "[a] state waives its immunity by voluntarily participating in federal spending programs only when Congress includes a clear statement of intent to condition participation in the programs on a State's consent to waive its constitutional immunity." *Hurst,* 482 F.3d at 811 (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 247 (1985)). Requiring a clear statement that acceptance of funds is conditioned on a waiver of immunity allows states to make an informed, voluntary decision as to whether to accept the funds. *Id.* (citing *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 279 (5th Cir. 2005)). "In seeking to determine whether the language of a condition is sufficiently clear, courts must view the statute 'from the perspective of a state official who is engaged in the process of deciding whether the state should accept [federal] funds and the obligations that go with those funds,' asking 'whether . . . a state official would clearly understand [the nature of the condition].'" *Id.* (quoting *Arlington Cent. Sch. Dist. Bd. Of*

---

[10] *See, e.g.*, *Tex. A & M Univ. Sys. v. Luxemburg*, 93 S.W.3d 410, 418 (Tex. App.–Houston [14 Dist.] 2002, pet. denied) ("Because the federal court lacked jurisdiction over Luxemburg's claims in the present suit, we must conclude that res judicata does not apply."); *Jackson v. Univ. of Tex. Health Science Ctr. Police Dep't*, No. 04-03-00553-CV, 2004 WL 572330, at *3 (Tex. App.–San Antonio Mar. 24, 2004, no pet.) (mem. op.) ("Consequently, res judicata did not bar Jackson from bringing these claims in state court since they were barred by immunity and dismissed in federal court for lack of subject matter jurisdiction.").

16

*Educ. v. Murphy*, 548 U.S. 291, 296 (2006)).

Applying this test to the federal Rehabilitation Act's judicial review provision in 29 U.S.C. § 722(c)(5)(J)(i), the Fifth Circuit held that the authorization for judicial review was a "general authorization for suit" and not a clear statement by Congress that states were waiving sovereign immunity by accepting federal funds. *Id.* at 812. We agree. In *Atascadero*, the Supreme Court addressed a separate provision in the federal Rehabilitation Act that provided:

> the remedies, procedures and rights set forth in Title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.] [including the right to sue in federal court to enforce obligations imposed under the statute] shall be available to any person aggrieved by any act or failure to act by any recipient of federal assistance or federal provider of such assistance under section 504 [29 U.S.C. § 794] of this title.

*Hurst*, 482 F.3d at 812 (quoting 29 U.S.C. § 794a). The Supreme Court held that even though states are recipients of federal assistance under the act, the statute was merely a general authorization for suit that did not waive Eleventh Amendment immunity. *Atascadero*, 472 U.S. at 245-46. Interestingly, after *Atascadero* was decided, Congress amended the statute to make its intent clear:

> A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973, title IX of the Education Amendments of 1972, the Age Discrimination Act of 1975, title VI of the Civil Rights Act of 1964, or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.

42 U.S.C. § 2000d-7.

The relevant provision of the federal Rehabilitation Act provides:

> Any party aggrieved by a final decision described in subparagraph (I), may bring a civil action for review of such decision. The action may be brought in any State court of competent jurisdiction or in a district court of the United

17

States of competent jurisdiction without regard to the amount in controversy. 29 U.S.C. § 722(c)(5)(J)(i). While this statute is more clear as to whom it applies, it is still only a general authorization for suit. *See Atascadero*, 473 U.S. at 245-46. Accordingly, we agree with the Fifth Circuit that Congress did not clearly state that by accepting federal funds, the State of Texas would waive its Eleventh Amendment immunity.

Second, as we stated above, even if we agreed that Eleventh Amendment immunity was waived, we must apply state procedural requirements to federal causes of action brought in state court. *See Exxon Corp.*, 881 S.W.2d at 306 n.9; *see also Smith & Assocs., LLP,* 169 S.W.3d at 822. Hurst does not explain why the Texas Legislature was not free to impose a filing deadline as a condition of the waiver of sovereign immunity.

As we stated above, the federal Rehabilitation Act does not contain a limitations period, nor does it require states accepting funds under the program to allow for a long filing period. *See* 29 U.S.C. § 722(c)(5)(J)(i). Moreover, 29 U.S.C. § 722(c)(5)(J)(i) allows suit in a state court "of competent jurisdiction," which necessarily means that the state's jurisdictional statues would still apply to any action brought under the federal law. *Id.*; *see also Richards v. Alibozek,* No. CV010510286S, 2002 WL 1815918, at *5 (Conn. Super. Ct. June 26, 2002) (not designated for publication) ("Moreover, because the General Assembly has not waived sovereign immunity for suits under the Rehabilitation Act, the state court is not a court 'of competent jurisdiction' within § 722(c)(5)(J)(i). A court of 'competent jurisdiction' is one that at least has subject matter jurisdiction under that forum's jurisdictional statutes."). Under these circumstances, even if the Texas Legislature waived sovereign immunity by accepting federal funds, there is nothing in the federal Rehabilitation

Act that precludes the use of a filing deadline to speed the process of administrative review. Accordingly, we reject Hurst's argument that the federal Rehabilitation Act provides a separate basis for jurisdiction such that she was not required to file her suit for judicial review within 30 days.

Correspondingly, Hurst argues that by adopting regulations that appear to allow suit in federal or state court, DARS waived sovereign immunity. *See* 40 TEX. ADMIN. CODE § 107.413. However, the legislature has not delegated authority to DARS to waive sovereign immunity, which is a function reserved to the legislature. *City of LaPorte v. Barfield*, 898 S.W.2d 288, 291 (Tex. 1995). Accordingly, DARS's adoption of regulations could not waive sovereign immunity.

## C. Hurst's Claims for Prospective, Declaratory Relief

While we agree with DARS that Hurst's claims seeking review of its administrative decision to deny her benefits is barred by sovereign immunity, her claims for declaratory relief are entirely separate and require a separate analysis. Hurst seeks a declaration that DARS's policy of refusing "exploratory back surgery" is contrary to the federal Rehabilitation Act. This type of claim does not implicate the doctrine of sovereign immunity.

"Sovereign immunity, unless waived, protects the State from lawsuits for damages." *Gen. Serv. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 594 (Tex. 2001) (emphasis added); *see also IT-Davy*, 74 S.W.3d at 853; *Hawkins v. El Paso First Health Plans, Inc.*, 214 S.W.3d 709, 716-18 (Tex. App.–Austin 2007, pet. filed) (holding that suit for declaratory relief was not a suit against the State because it did not seek to impose liability

19

or seek money damages). Sovereign immunity is based on the premise that the legislature's policy-making function deserves protection. *IT-Davy*, 74 S.W.3d at 854. For example, sovereign immunity bars a claim for damages arising out of a breach of contract unless a waiver of sovereign immunity can be established or consent is obtained from the legislature. *Id.* This ensures that current policymakers are not bound by their predecessors' long-term contracts and can respond to changing conditions in the public's best interest. *Id.*

Certain types of actions, however, do not implicate these concerns and, therefore, do not implicate the sovereign immunity doctrine. *Nueces County v. Ferguson*, 97 S.W.3d 205, 217 (Tex. App.–Corpus Christi 2002, no pet.). For example, suits for declaratory relief do not implicate the sovereign immunity doctrine. *See IT-Davy*, 74 S.W.3d at 855; *Hawkins*, 214 S.W.3d at 716; *City of Dallas v. Blanton*, 200 S.W.3d 266, 279 (Tex. App.–Dallas 2006, no pet.); *Ferguson*, 97 S.W.3d at 218. "[N]o consent is required when suit is filed seeking only a declaration or enforcement of rights." *Ferguson*, 97 S.W.3d at 217; *see also Sefzik v. Tex. Dep't of Transp.*, No. 13-06-550-CV, 2008 WL 2454228, at *3 (Tex. App.–Corpus Christi June 19, 2008, no pet. h.). "Suits to compel state officers to act within their official capacity do not attempt to subject the State to liability." *IT-Davy*, 74 S.W.3d at 855; *Hawkins*, 214 S.W.3d at 716-18; *Blanton*, 200 S.W.3d at 279 ("A party generally can maintain a suit to determine its rights without legislative permission because such suits are not considered 'suits against the State' for purposes of sovereign immunity."). Suits for declaratory relief do not hamper policymakers' ability to perform in the public interest by binding them to outdated or expired policies. *Sefzik*, 2008 WL 2454228, at *4. "If a statute

sought to be construed through a declaratory judgment is outdated, and thus a declaration of rights under that statute causes problems for the general public, it is the policymakers' job to change the statute, not to ignore it or violate it with impunity." *Id.*

DARS argues that Hurst's claim for prospective, declaratory relief is a veiled attempt to obtain compensation and, therefore, is barred by sovereign immunity. DARS reasons that the only effective, prospective relief would be an order requiring DARS to expend funds for her surgery. We disagree.

Hurst pleaded her claims for declaratory relief as a separate remedy. While Hurst's claim for declaratory relief will not ultimately result in a reversal of DARS's prior denial of benefits or in the immediate payment for her surgery, she alleges she has been injured by DARS's failure to comply with the law governing its operations. Hurst continues to suffer from her disability, and it is certainly possible that she may require a different type of surgery on her back as her disability progresses that may again be characterized as "exploratory surgery." To that extent, Hurst will benefit from a declaration that DARS's policies are contrary to law. *See City of Round Rock v. Whiteaker,* 241 S.W.3d 609, 633-34 (Tex. App.–Austin 2007, pet. filed).

## D. DARS's policy of prohibiting exploratory back surgery

As a final effort, Hurst spends several pages of her brief arguing that DARS's policy of prohibiting benefits for exploratory back surgery is contrary to law. Essentially, through this argument she asks this Court to grant her the declaratory relief that she requested in the trial court. As this is an appeal from an order granting DARS's plea to the jurisdiction, it is inappropriate for this Court to delve into the merits of her claims. *Bland Indep. Sch.*

21

*Dist.*, 34 S.W.3d at 554; *Sefzik*, 2008 WL 2454228, at *5. The trial court must consider this issue on remand.

## IV. Conclusion

We hold that Hurst's claim for judicial review of DARS's administrative decision is barred by sovereign immunity. Accordingly, we affirm the trial court's order dismissing that claim for lack of jurisdiction. However, Hurst's claim for prospective, declaratory relief does not implicate the doctrine of sovereign immunity. Accordingly, we reverse the trial court's order dismissing Hurst's claim for prospective, declaratory relief and remand those claims to the trial court for further proceedings.

_____
GINA M. BENAVIDES,
Justice

Memorandum Opinion delivered and
filed this the 23rd day of October, 2008.

22